## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| BUILDING TRADES PENSION FUND OF WESTERN PENNSYLVANIA, Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br><br>    v.<br><br>AVANTOR, INC., MICHAEL STUBBLEFIELD, and R. BRENT JONES,<br><br>            Defendants. | Case No. _____<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Building Trades Pension Fund of Western Pennsylvania ("Plaintiff"), by and through Plaintiff's counsel, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, including the investigation of Plaintiff's counsel, which included, among other things, a review of Defendants' (defined below) United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by Avantor, Inc. ("Avantor" or the "Company"), analyst reports and advisories about the Company, media reports concerning the Company, judicial filings and opinions, and other publicly available information.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

## I.    NATURE OF THE ACTION AND OVERVIEW

1.    This is a federal securities class action on behalf of a class of all persons and entities who purchased or otherwise acquired Avantor common stock between March 5, 2024, and October 28, 2025, inclusive (the "Class Period"), seeking to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5, promulgated thereunder.

2.    Avantor, a Delaware corporation with its principal executive offices in Radnor, Pennsylvania, provides scientific products and services for customers in biotechnology, pharmaceuticals, healthcare, education, government, and other industries.  Avantor's common stock trades on the New York Stock Exchange under the ticker symbol "AVTR."

3.    During the Class Period, Defendants misled investors by falsely touting the Company's competitive positioning and downplaying the effects of increased competition.  For example, during an earnings call on July 26, 2024, in response to an analyst's question about whether Avantor was losing share to a competitor, Defendant Michael Stubblefield, then the Company's President and Chief Executive Officer, assured investors that Avantor's "lab business stacks up well against every number that certainly that we've seen," that "we continue to enhance our position," and that "we're really confident in our value proposition and our competitive position."  Likewise, Defendants repeatedly pointed to Avantor's purported competitive advantages, such as its digital capabilities, as evidence that the Company would continue to enjoy strong competitive positioning.

4.     Investors began to learn the truth about the effects of increased competition on Avantor's business on April 25, 2025, when the Company reported disappointing first quarter 2025 financial results, cut its guidance for 2025, and announced that Defendant Stubblefield would be stepping down from his roles as President and Chief Executive Officer.  Defendants attributed Avantor's weak performance and outlook to "the impact of increased competitive intensity."

5.     On this news, the price of Avantor common stock declined $2.57 per share, or more than 16.5%, from a close of $15.50 per share on April 24, 2025, to close at $12.93 per share on April 25, 2025.

6.     Then, on August 1, 2025, the Company reported disappointing second quarter 2025 financial results, including a year-over-year decrease in net sales, and further reduced the Company's 2025 guidance—now projecting organic revenue growth of -2% to 0%.  Defendants again attributed Avantor's poor results and outlook to "increased competitive intensity," and further admitted that the Company did not expect the competitive environment to materially improve in the remainder of 2025 and weak performance would therefore likely persist.

7.     In response to this news, the price of Avantor common stock declined $2.08 per share, or more than 15%, from a close of $13.44 per share on July 31, 2025, to close at $11.36 per share on August 1, 2025.

8.     Then, on October 29, 2025, the Company reported weak third quarter 2025 financial results, including -5% organic revenue growth (below the guidance Defendants had provided in August), and a net loss of $712 million, which Defendants

3

primarily attributed to a non-cash goodwill impairment charge of $785 million. Defendants revealed that the impairment charge was necessary due in part to "competitive pressures" that had "meaningfully impacted" the Company's margins, and further admitted that the Company had lost several large accounts.

9.    On this news, the price of Avantor common stock declined $3.50 per share, or more than 23%, from a close of $15.08 per share on October 28, 2025, to close at $11.58 per share on October 29, 2025.

10.    This Complaint alleges that, throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts, about the Company's business and operations.  Specifically, Defendants misrepresented and/or failed to disclose that: (1) Avantor's competitive positioning was weaker than Defendants had publicly represented; (2) Avantor was experiencing negative effects from increased competition; and (3) as a result, Defendants' representations about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis.

11.    As a result of Defendants' wrongful acts and omissions, and the significant decline in the market value of the Company's common stock pursuant to the revelation of the fraud, Plaintiff and other members of the Class (defined below) have suffered significant damages.

## II.    <u>JURISDICTION AND VENUE</u>

12.    Plaintiff's claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

13.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

14.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b), because Avantor is incorporated in this District.

15.     In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications, and the facilities of the national securities markets.

## III.     PARTIES

16.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Avantor common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

17.     Defendant Avantor, Inc. is a Delaware corporation headquartered at Radnor Corporate Center, Building One, Suite 200, 100 Matsonford Road, Radnor, Pennsylvania 19087.

18.     Defendant Michael Stubblefield was the Company's President and Chief Executive Officer, and a Company director, until August 18, 2025.

19.     Defendant R. Brent Jones is the Company's Executive Vice President and Chief Financial Officer.

20.     Defendants Stubblefield and Jones are collectively referred to herein as the "Individual Defendants."

21.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, i.e., the market. Each Individual Defendant was provided with copies of the Company's reports alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and/or were being concealed from, the public, and that the positive representations that were being made were then materially false and/or misleading.

22.     Avantor and the Individual Defendants are collectively referred to herein as "Defendants."

## IV.    SUBSTANTIVE ALLEGATIONS

### A.    Background

23.     Avantor is a Delaware corporation with its principal executive offices in Radnor, Pennsylvania. Avantor is a life science tools company that provides scientific products and services for customers in a variety of industries. The Company reports its financial results in two business segments: Laboratory Solutions (which accounts for approximately two-thirds of the Company's net sales); and Bioscience Production.

24.    Avantor's common stock trades on the New York Stock Exchange under the ticker symbol "AVTR."

**B.    Defendants' False and Misleading Statements**

25.    The Class Period begins on March 5, 2024, when Defendant Stubblefield represented Avantor at a TD Cowen healthcare industry conference.  In response to an analyst's question about Avantor's competitive positioning in its Laboratory Solutions business, Stubblefield emphasized that Avantor's competitive position "[c]ontinues to be strong," further representing that[1]:

> We had a really terrific year in 2023.  The commercial intensity has ramped up on this platform dramatically, I would say, over the last 12 to 18 months. And we've seen meaningful signs of that.  We grew our academia position last year, high single digits, low double digits, a really terrific year where we were clearly taking share another really strong year in biopharma with a lot of new customers and extensions of some important agreements there.
>
> So **we continue to have confidence in the positioning [of] a lot of investments in our digital capabilities there** to make it more efficient for our customers to engage with us, minimize the time that they're spending on some of these more administrative tasks.
>
> And if I look at just some proof points there, **the traffic to our sites relative to our competitors is a nice indicator for our business**.  And then some of the solutions that we've deployed into our customers, whether it be some of the auto replenishment tools that we've deployed, or some of the inventory management tools that we've deployed, just a lot of momentum that we have off of that platform.  So we like to set up the activity is good, and we do anticipate a bit of growth this year.

---

[1] All emphases are added unless otherwise noted.

26.     On May 30, 2024, Defendant Stubblefield represented Avantor at the Sanford C. Bernstein Strategic Decisions Conference.   There, in response to an analyst's question about "where [Avantor] fit[s] in the competitive landscape," Stubblefield stated:

> Yes.  I mean it's obviously a very attractive space to be in with a lot of growth and a lot of innovation.  And so there's continued opportunities for you to bring new products into the market, reinforce your positioning.
>
> **But when I think about the landscape, we're going to be the leader in providing process ingredients and materials and single-use solutions into the space.**  I think the challenge, just as an industry, is everyone's portfolios are rather unique.   There's limited overlap between the companies and the list of names that you mentioned there.  We don't traditionally think of them as competitors in what we do because largely, they don't have the type of materials that we would have.
>
> And I mentioned in cell and gene therapy, for example, it's kind of a new frontier.  There's a lot of white space here, a lot of new materials that are necessary for those processes to work.  And so we're deeply focused.  As I mentioned, the new innovation center, a big part of that will be focused on cell and gene therapy innovation and bringing new materials into the workflow that are necessary to meet the needs of these customers.  So it's definitely a complex ecosystem.
>
> A lot of those names you mentioned, **we would actually view as partners or complementary to what we do**.  It's a very fragmented space.  We literally provide thousands of materials into this space and have developed the capabilities over decades.
>
> You mentioned my heritage back in the chemicals and petrochemicals space.  **Coming into this space and understanding the quality requirements and the capabilities that it takes to meet our customers' requirements are extreme**.   Our manufacturing

processes take a certain amount of time, but ***our quality processes probably taking an equal amount of focus and the regulatory expertise that you have to be able to do what we do is quite significant***.

So we think ***we have a differentiated platform*** that, at least over the 10 years that I've been here, has outgrown the broader market by 300 to 400 basis points consistently.

27.    Defendants continued to downplay concerns about Avantor's competitive positioning.  For example, at a Goldman Sachs healthcare industry conference on June 11, 2024, in response to an analyst's question about how Avantor's "portfolio [is] differentiated from peers" in bioprocessing end markets, Defendant Stubblefield represented that Avantor differentiated itself through factors such as "really sophisticated quality and regulatory expertise that we're able to offer to our customers to help with them their regulatory" and process-related needs. Stubblefield further assured investors that while "there's a lot of larger players that are there in these ends markets. . . . ***we don't view them as competitors***."

28.    On July 26, 2024, the Company announced its second quarter 2024 financial results.  In the accompanying earnings call that same day, a Bank of America analyst asked whether there was "any sign you're potentially losing share to one of your competitors because we have heard more encouraging trends elsewhere, and it does seem like the broader end market in terms of biopharma and academic is starting to trend in the right direction."  In response, Defendant Stubblefield represented that "our lab business stacks up well against every number that certainly we've seen," that "we continue to enhance our position," and that "***we're really confident in our value proposition and our competitive position***."

29.    Similarly, during the Company's third quarter 2024 earnings call on October 25, 2024, Defendant Stubblefield represented that Avantor is "clearly a leader" in the Laboratory Solutions market and that "***we like our positioning and momentum here***." Specifically, Defendant Stubblefield pointed to Avantor's "outperformance . . . in that segment," touting "a lot of data point[s] here to support our view here that we've got a nice share story."

30.    On February 7, 2025, the Company announced its fourth quarter 2024 financial results and provided guidance for fiscal year 2025. In the accompanying earnings call that same day, Defendant Jones represented that "***we are entering 2025 well positioned for growth***." Jones assured investors that "[t]he implementation of our new operating model, the progress of our cost transformation initiatives, and ***encouraging trends we are seeing across key end-markets***, particularly bioprocessing, all give us ***confidence in forecasting organic revenue growth, continued market expansion, and double-digit EPS growth in 2025***." Specifically, Jones projected "organic revenue growth of 1% to 3%" and "low single-digit organic growth in Lab Solutions." Defendant Stubblefield likewise stated that "[w]e have a solid plan for the year and I am confident that we will continue to execute well."

31.    The above statements identified in paragraphs 25-30 were materially false and misleading, and failed to disclose materially adverse facts, about the Company's business and operations. Specifically, Defendants misrepresented and/or failed to disclose that: (1) Avantor's competitive positioning was weaker than

Defendants had publicly represented; (2) Avantor was experiencing negative effects from increased competition; and (3) as a result, Defendants' representations about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis.

### C.    The Truth Begins to Emerge

32.    Investors began to learn the truth about Avantor's competitive positioning on April 25, 2025, when the Company announced its first quarter 2025 financial results, reporting weak organic sales in Laboratory Solutions and cutting its guidance for 2025.  Specifically, during an earnings call held the same day, the Company now projected total organic revenue growth between -1% and +1% (down from a range between +1% and +3%) and Laboratory Solutions growth between negative low single digits and flat (down from positive low single digit growth).  The Company further announced that Defendant Stubblefield would be stepping down from his roles as President and Chief Executive Officer upon the appointment of a successor.

33.    During the earnings call, Defendant Jones admitted that Avantor had "felt the impact of increased competitive intensity," resulting in "reduced volumes at a handful of customers."  Defendant Jones further explained that Avantor's revised 2025 outlook reflected "the current uncertainties related to . . . competitive intensity."

34.    On this news, the price of Avantor common stock declined $2.57 per share, or more than 16.5%, from a close of $15.50 per share on April 24, 2025, to close at $12.93 per share on April 25, 2025.

11

35.     Investors learned more about the effects of the Company's competitive struggles on August 1, 2025, when the Company reported disappointing second quarter 2025 financial results, including net sales of $1.122 billion (a year-over-year decrease of 3%) and Adjusted Operating Income of $133.3 million (a year-over-year decrease of 11.7%) in Avantor's Laboratory Solutions business.

36.     During the accompanying earnings call that same day, Defendants further reduced the Company's full-year guidance (now projecting organic revenue growth of -2% to 0%), including its guidance for growth in Laboratory Solutions (now projecting growth of "minus low single digits," down from minus low single digits to flat).

37.     Defendant Jones attributed the weakening outlook for the Company's Laboratory Solutions business to "increased competitive intensity," admitted that the Company did not expect the competitive environment to "chang[e] materially" in the remainder of 2025, and projected that the weak Laboratory Solutions performance would persist.

38.     More specifically, Defendant Jones projected that in the third quarter of 2025, the Company would record organic revenue growth of -4% to -2%, including similar negative growth in the Laboratory Solutions business segment.  However, Jones assured investors that these projections were conservative, representing in response to an analyst's question about the Company's visibility into the remainder of the year that "***we're being careful in Q3 there***."  In response to this news, the price of Avantor common stock declined $2.08 per share, or more than 15%, from a

close of $13.44 per share on July 31, 2025, to close at $11.36 per share on August 1, 2025.

39.     Then, on October 29, 2025, the Company reported weak financial results for the third quarter of 2025, including 5% decreases in organic revenue growth both overall and in the Company's Laboratory Solutions business—revealing that Defendants' recent assurances of "careful" third quarter projections of -4% to -2% growth were false.   The Company further reduced its full-year guidance (now projecting organic revenue growth of -3.5% to -2.5%) and reported a net loss of $712 million, which Defendants primarily attributed to a non-cash goodwill impairment charge of $785 million.

40.     During the accompanying earnings call that same day, Defendant Jones revealed that the large impairment charge was "associated with our Lab distribution business"—which makes up a majority of Avantor's Laboratory Solutions business segment—and "was necessitated in large part by the continued weakness in our share price as well as the margin headwinds this business is facing."   Defendant Jones further admitted that the Company's "margin headwinds" included competitive challenges that had "pressured [Avantor's] ability to get price, which has meaningfully impacted margins year-over-year on a sequential basis."

41.     Moreover, Emmanuel Ligner—the Company's new President and Chief Executive Officer as of August 18, 2025—revealed in response to an analyst's question about market share that Avantor had "lost a couple of large accounts." Further demonstrating the ongoing negative effects of Avantor's competitive

struggles, Defendant Jones admitted that "we're seeing the impact of the contract losses on share there" and that "[i]t will take time both on the defense and the new contract wins to see those come in there."

42.     On this news, the price of Avantor common stock declined $3.50 per share, or more than 23%, from a close of $15.08 per share on October 28, 2025, to close at $11.58 per share on October 29, 2025.

## V.     PLAINTIFF'S CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired Avantor common stock during the Class Period (the "Class"). Excluded from the Class are Defendants, their agents, directors and officers of Avantor, and their families and affiliates.

44.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

45.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

> a.     Whether Defendants violated the Exchange Act;
>
> b.     Whether Defendants omitted and/or misrepresented material facts;

c.    Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

d.    Whether Defendants knew or recklessly disregarded that their statements were false and/or misleading;

e.    Whether the price of Avantor common stock was artificially inflated; and

f.    The extent of damage sustained by members of the Class and the appropriate measure of damages.

46.    Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

47.    Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation.  Plaintiff has no interests that conflict with those of the Class.

48.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.    Joinder of all Class members is impracticable.

## VI.    APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE MARKET DOCTRINE

49.    Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

a.    Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b.      The omissions and misrepresentations were material;

c.      The Company's common stock traded on an efficient market;

d.      The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

e.      Plaintiff and the Class purchased Avantor common stock between the time the Company and the Individual Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

50.     At all relevant times, the market for the Company's common stock was efficient because: (1) as a regulated issuer, the Company filed periodic public reports with the SEC; and (2) the Company regularly communicated with public investors using established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

## VII.   <u>NO SAFE HARBOR</u>

51.     Defendants' "Safe Harbor" warnings accompanying any forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

52.     Defendants are liable for any false and/or misleading forward-looking statements pleaded because, at the time each forward-looking statement was made,

the speaker knew the forward-looking statement was false or misleading and the forward-looking statement was authorized and/or approved by an executive officer of the Company who knew that the forward-looking statement was false. None of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## VIII.  LOSS CAUSATION/ECONOMIC LOSS

53.    Defendants' wrongful conduct directly and proximately caused the economic loss suffered by Plaintiff and the Class. The price of Avantor common stock significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses. As a result of their purchases of Avantor common stock during the Class Period, Plaintiff and the Class suffered economic loss, i.e., damages, under the federal securities laws.

## IX.    ADDITIONAL SCIENTER ALLEGATIONS

54.    During the Class Period, Defendants had both the motive and opportunity to commit fraud. They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time. In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of

business that operated as a fraud or deceit on purchasers of Avantor common stock during the Class Period.

## X.   CLAIMS AGAINST DEFENDANTS

### COUNT I

**Violations of Section 10(b) of the Exchange Act and
SEC Rule 10b-5 Promulgated Thereunder
Against All Defendants**

55.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

56.    During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and the Class; and (2) cause Plaintiff and the Class to purchase Avantor common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

57.    Defendants: (1) employed devices, schemes, and artifices to defraud; (2) made untrue statements of material fact and/or omitted material facts necessary to make the statements not misleading; and (3) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of Avantor common stock in an effort to maintain artificially high market prices thereof in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5.

58.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

59.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

60.    The Individual Defendants acted as controlling persons of Avantor within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations, and/or intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control—and did influence and control, directly or indirectly—the decision-making of the Company, including the content and dissemination of the various false and/or misleading statements.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the activities giving rise to the securities violations as alleged herein, and exercised the same.

62.    As described above, the Company and the Individual Defendants each violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable under Section 20(a) of the Exchange Act.  As a direct and proximate result of this wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of Avantor common stock during the Class Period.

## XI.    **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

b.    Awarding compensatory damages in favor of Plaintiff and other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d.    Such other and further relief as the Court may deem just and proper.

## XII.    **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Dated: October 30, 2025                    Respectfully submitted,
                                           *s/ Naumon A. Amjed*
                                           **KESSLER TOPAZ**
                                             **MELTZER & CHECK, LLP**
                                           Naumon A. Amjed (PA #309520)

Ryan T. Degnan (PA #309305)
Karissa J. Sauder (PA #319196)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
rdegnan@ktmc.com
ksauder@ktmc.com

*Counsel for Plaintiff Building Trades
Pension Fund of Western Pennsylvania*

## CERTIFICATION

Building Trades Pension Fund of Western Pennsylvania ("Plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1.      Plaintiff did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any private action.

2.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

3.      Plaintiff's Class Period purchase and sale transactions in the Avantor, Inc. securities that are the subject of this action are attached in Schedule A.

4.      Plaintiff has full power and authority to bring suit to recover for its investment losses.

5.      Plaintiff has reviewed the Complaint and authorizes its filing.

6.      I, William Greer, Trustee of Building Trades Pension Fund of Western Pennsylvania, am authorized to make legal decisions, and execute this certification, on behalf of Plaintiff.

7.      Plaintiff intends to actively monitor and vigorously pursue this action for the benefit of the class.

8.      Plaintiff will endeavor to provide fair and adequate representation and work directly with the efforts of class counsel to ensure that the largest recovery for the class consistent with good faith and meritorious judgment is obtained.

9.      Plaintiff has neither served nor sought to serve as a representative party for a class action filed under the federal securities laws during the three years prior to the date of this certification.

10.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___29___ day of October 2025.

By: _____
William Greer
Trustee
Building Trades Pension Fund of Western
Pennsylvania

## SCHEDULE A

| Security | Buy/Sell | Date | Quantity | Price |
|---|---|---|---|---|
| Common Stock | Buy | 7/25/2024 | 2,982 | $22.9443 |
| Common Stock | Buy | 7/25/2024 | 3,582 | $22.9027 |
| Common Stock | Buy | 7/25/2024 | 5,517 | $22.8181 |
| Common Stock | Buy | 7/29/2024 | 2,963 | $26.1919 |
| Common Stock | Buy | 3/18/2025 | 2,227 | $16.7845 |
| Common Stock | Sell | 8/28/2024 | 1,377 | $25.6000 |
| Common Stock | Sell | 10/25/2024 | 1,373 | $22.6628 |
| Common Stock | Sell | 2/25/2025 | 1,450 | $17.4762 |
| Common Stock | Sell | 5/23/2025 | 828 | $12.5194 |
| Common Stock | Sell | 6/26/2025 | 1,891 | $13.6450 |
| Common Stock | Sell | 6/26/2025 | 4,766 | $13.6654 |
| Common Stock | Sell | 6/26/2025 | 671 | $13.6050 |
| Common Stock | Sell | 6/26/2025 | 4,915 | $13.6836 |