**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BUILDING TRADES PENSION FUND OF WESTERN PENNSYLVANIA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> AVANTOR, INC., MICHAEL STUBBLEFIELD, and R. BRENT JONES, <br><br> Defendants. | Case No. 2:25-cv-06187-GAM <br><br> Hon. Gerald A. McHugh <br> District Judge <br><br> <u>CLASS ACTION</u> <br><br> **ORAL ARGUMENT REQUESTED** |
| CITY OF PONTIAC REESTABLISHED GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> AVANTOR, INC., MICHAEL STUBBLEFIELD, R. BRENT JONES, JONATHAN PEACOCK, and STEVEN ECK, <br><br> Defendants. | Case No. 2:25-cv-06686-GAM <br><br> Hon. Gerald A. McHugh <br> District Judge <br><br> <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE PENSION FUNDS FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS <u>LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL</u>**

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION .................................................................................................1

II.  FACTUAL BACKGROUND.............................................................................5

III. ARGUMENT .....................................................................................................6

  A.  The Related Actions Should Be Consolidated.........................................6

  B.  The Pension Funds Satisfy the PSLRA's Requirements and Should Be
      Appointed as Lead Plaintiff ....................................................................7

      1.  The Pension Funds Have Timely Moved for Appointment
          as Lead Plaintiff.............................................................................8

      2.  The Pension Funds Assert the Largest Financial Interest in the Relief
          Sought by the Class........................................................................9

      3.  The Pension Funds Satisfy the Requirements of Rule 23............................9

          a)  The Pension Funds' Claims Are Typical of Those
              of the Class................................................................................ 9

          b)  The Pension Funds Will Adequately Protect the Interests
              of the Class................................................................................ 10

  C.  The Court Should Approve the Pension Funds' Selection of Counsel...................14

IV.  CONCLUSION..................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)............................................................................................. *passim*

*Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*,
586 F.3d 703 (9th Cir. 2009) ..........................................................................................14

*Himes v. Five Below, Inc.*,
Nos. 24-3638, *et al.*,
2024 WL 4596235 (E.D. Pa. Oct. 28, 2024).......................................................................7, 11

*Patel v. Coinbase Glob., Inc.*,
Nos. 22-4915 (BRM) (LDW), *et al.*,
2022 WL 17582549 (D.N.J. Dec. 12, 2022)..............................................................................7

**Statutes**

15 U.S.C. § 78u-4(a) .............................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 23(a)(4).................................................................................................10

Fed. R. Civ. P. 42(a) ......................................................................................................7

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ...........................3, 14

Lead Plaintiff Movants Building Trades Pension Fund of Western Pennsylvania ("Building Trades"), City Pension Fund for Firefighters & Police Officers in the City of Miami Beach ("Miami Beach F&P"), City of Orlando Firefighters' Pension Fund ("Orlando Firefighters"), and City of Orlando Police Officers' Pension Fund ("Orlando Police" and, together with Orlando Firefighters, "Orlando") (collectively, the "Pension Funds") respectfully submit this Memorandum of Law in support of their motion (the "Motion") requesting: (1) consolidation of the above-captioned, related actions (the "Related Actions") pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)"); (2) appointment of the Pension Funds as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (3) approval of the Pension Funds' selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") and Saxena White P.A. ("Saxena White") as Lead Counsel for the class; and (4) any such further relief as the Court may deem just and proper.

## I.    INTRODUCTION

The Related Actions are two securities class actions brought against Avantor, Inc. ("Avantor" or the "Company") and certain of its executive offices and directors (collectively, "Defendants") under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, promulgated thereunder, 17 C.F.R. § 240.10b-5.  The Related Actions are brought on behalf of a class of all persons and entities who purchased or otherwise acquired Avantor common stock between March 5, 2024, and October 28, 2025, inclusive (the "Class Period").  As detailed below, the Related Actions involve common issues of law and fact and should be consolidated pursuant to Rule 42(a).  *See infra* Section III.A.

1

After consolidation, the PSLRA allows any member of the purported class to move for appointment as lead plaintiff and sets forth the process for determining which movant is the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(A)-(B). Pursuant to the PSLRA, a court must appoint the "most adequate plaintiff" as lead plaintiff, which is the movant or group of movants that: (1) makes a timely motion; (2) asserts the largest financial interest in the litigation; and (3) otherwise satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001) (describing the PSLRA's process for selecting a lead plaintiff).

The Pension Funds respectfully submit that they are the presumptive "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff. The Pension Funds Motion is timely and the Pension Funds' losses of approximately $823,181.40 under a last-in, first-out ("LIFO") analysis in connection with their purchases of Avantor common stock during the Class Period represent the largest known financial interest in the relief sought by the class.[1] In addition to asserting the largest financial interest, the Pension Funds easily satisfy the relevant requirements of Rule 23 because their claims are typical of those of all class members and they will fairly and adequately represent the interests of the class. Like the other members of the class, the Pension Funds seek recovery of the losses they incurred on their Class Period purchases of Avantor common stock at artificially inflated prices due to Defendants' alleged misconduct.

Moreover, as sophisticated institutional investors that collectively manage more than $2 billion in assets, the Pension Funds are the prototypical lead plaintiff envisioned by Congress

---

[1]    The Pension Funds' PSLRA-required certifications are attached as Exhibit A to the Declaration of Naumon A. Amjed in Support of the Motion of the Pension Funds for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel (the "Amjed Declaration"). Charts providing calculations of the Pension Funds' financial interests are provided as Exhibit B to the Amjed Declaration.

under the PSLRA and their appointment would fulfill this critical legislative purpose. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *see also Cendant*, 264 F.3d at 273 (finding that "the purpose of the [PSLRA] was to encourage institutional investors to serve as lead plaintiff") (citations omitted). As set forth in greater detail in the Joint Declaration in Support of the Motion of the Pension Funds for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel (the "Joint Declaration"), the Pension Funds have substantial experience prosecuting securities class actions as lead plaintiff, including in partnership with other institutional investors, as well as overseeing the work of proposed Lead Counsel Kessler Topaz and Saxena White. *See* Amjed Decl., Ex. C ¶ 6. Through their prior experience, the Pension Funds have proven that they have the ability to successfully direct complex litigation separate and apart from their counsel, and they are already functioning as a cohesive group in this case. *See id*. ¶¶ 6, 12-14, 17.

The Pension Funds fully understand the Lead Plaintiff's obligations to the class under the PSLRA and are willing and able to undertake those responsibilities to ensure the zealous prosecution of the Related Actions. *See id*. ¶¶ 5-7, 9, 11-12, 15, 17, 19. The Joint Declaration affirms: (1) the Pension Funds' determination that their appointment would benefit the class and the Pension Funds' ability to work together as a cohesive group to cooperate in the prosecution of the complex litigation against Defendants; (2) the basis for the Pension Funds' selection of Kessler Topaz and Saxena White as proposed Lead Counsel, including the firms' history of successfully prosecuting securities class actions together; and (3) the specific steps the Pension Funds have taken (and will continue to take) to ensure the effective and efficient prosecution of the Action.

3

*See id*. ¶¶ 9, 11-19.  Moreover, before filing their Motion, representatives from the Pension Funds convened a conference call and discussed, among other things, how they will coordinate their joint prosecution of this litigation, and otherwise ensure the zealous and cost-effective prosecution of the Related Actions in the best interests of the class.  *See id*. ¶¶ 12-14.  Accordingly, the Pension Funds have provided ample evidence of their ability to work together effectively, as well as their commitment and ability to fulfill their obligations to the class under the PSLRA.

The Pension Funds have further demonstrated their adequacy through their selection of Kessler Topaz and Saxena White to serve as Lead Counsel for the class.  As the "most adequate plaintiff" under the PSLRA, the Pension Funds' selection of Kessler Topaz and Saxena White as Lead Counsel should be approved.  15 U.S.C. § 78u-4(a)(3)(B)(v).  Kessler Topaz and Saxena White have successfully prosecuted complex actions under the PSLRA together as co-lead counsel, and have jointly recovered millions of dollars for investors in prior cases.  *See infra* Section III.C.  Moreover, Kessler Topaz—under Building Trades's oversight—has already taken steps to protect the interests of the class by investigating the claims against certain of the Defendants and by the filing of *Building Trades Pension Fund of Western Pennsylvania v. Avantor, Inc., et al.*, No. 2:25-cv-06187-GAM (E.D. Pa. filed Oct. 30, 2025) (the "*Building Trades* Action"), the first-filed of the Related Actions, thereby triggering the PSLRA's lead plaintiff process.  Thus, the class can be assured of zealous representation if the Court approves the Pension Funds' selection of Kessler Topaz and Saxena White as Lead Counsel.

Based on the Pension Funds' significant financial interest in the outcome of the Related Actions, and their ability to jointly oversee the prosecution of the litigation, the Pension Funds respectfully request that the Court appoint them as Lead Plaintiff, approve their selection of Kessler Topaz and Saxena White as Lead Counsel, and otherwise grant their Motion.

## II.    FACTUAL BACKGROUND

Avantor is a Delaware corporation with its principal executive offices in Radnor, Pennsylvania.    The Company provides scientific products and services for customers in biotechnology, pharmaceutical, healthcare, education, government, and other industries. Avantor's common stock trades on the New York Stock Exchange under the ticker symbol "AVTR."

The Related Actions allege that, during the Class Period, Defendants made materially false and/or misleading statements and failed to disclose material adverse facts about the Company's business and operations.    Specifically, Defendants failed to disclose that: (1) Avantor's competitive positioning was weaker than Defendants had publicly represented; (2) Avantor was experiencing negative effects from increased competition; and (3) as a result, Defendants' representations about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis.

Investors began to learn the truth about the effects of increased competition on Avantor's business on April 25, 2025, when the Company reported disappointing first quarter 2025 financial results, cut its guidance for 2025, and announced that Defendant Michael Stubblefield would be stepping down from his roles as the Company's President and Chief Executive Officer.    On this news, the price of Avantor common stock declined $2.57 per share, or more than 16.5%, from a close of $15.50 per share on April 24, 2025, to close at $12.93 per share on April 25, 2025.

On August 1, 2025, the Company reported disappointing second quarter 2025 financial results, including a year-over-year decrease in net sales, and further reduced the Company's 2025 guidance—now projecting organic revenue growth of -2% to 0%.    Defendants again attributed Avantor's poor results and outlook to "increased competitive intensity," and further admitted that

5

the Company did not expect the competitive environment to materially improve in the remainder of 2025, and weak performance would likely persist.  In response to this news, the price of Avantor common stock declined $2.08 per share, or more than 15%, from a close of $13.44 per share on July 31, 2025, to close at $11.36 per share on August 1, 2025.

Finally, on October 29, 2025, the Company reported weak third quarter 2025 financial results, including -5% organic revenue growth (below the guidance Defendants had provided in August), and a net loss of $712 million, which Defendants primarily attributed to a non-cash goodwill impairment charge of $785 million.  Defendants revealed that the impairment charge was necessary due in part to "competitive pressures" that had "meaningfully impacted" the Company's margins, and further admitted that the Company had lost several large accounts.  On this news, the price of Avantor common stock declined $3.50 per share, or more than 23%, from a close of $15.08 per share on October 28, 2025, to close at $11.58 per share on October 29, 2025.

## III.    ARGUMENT

### A.    The Related Actions Should Be Consolidated

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under [the Exchange Act] has been filed," courts shall not appoint a lead plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii).

Here, there are at least two related securities class actions asserting claims under the federal securities laws on behalf of investors against Defendants:

6

| Case Caption | Date Filed | Claims/Class Period |
|---|---|---|
| *Building Trades Pension Fund of W. Pa. v. Avantor, Inc., et al.*, No. 2:25-cv-06187-GAM (E.D. Pa.) | October 30, 2025 | Sections 10(b) and 20(a) of the Exchange Act; March 5, 2024, through October 28, 2025 |
| *City of Pontiac Reestablished Gen. Emps.' Ret. Sys. v. Avantor, Inc., et al.*, No. 2:25-cv-06686-GAM (E.D. Pa.) | November 25, 2025 | Sections 10(b) and 20(a) of the Exchange Act; March 5, 2024, through October 28, 2025 |

Under Rule 42(a), consolidation of actions before the court is appropriate where the actions "involve a common question of law or fact." Fed. R. Civ. P. 42(a); *see also Patel v. Coinbase Glob., Inc.*, Nos. 22-4915 (BRM) (LDW), *et al.*, 2022 WL 17582549, at *2 (D.N.J. Dec. 12, 2022) ("Consolidation is routinely granted where securities class actions involve common questions of law and fact, and consolidation will promote efficiency and avoid unnecessary costs or delay.") (cleaned up); *Himes v. Five Below, Inc.*, Nos. 24-3638, *et al.*, 2024 WL 4596235, at *2 n.3 (E.D. Pa. Oct. 28, 2024) (McHugh, J.) (noting the court's consolidation of related securities class actions). Here, the Related Actions assert similar claims under the Exchange Act against overlapping defendants relating to substantially the same conduct during identical class periods. Accordingly, the Related Actions involve common questions of law or fact and, therefore, should be consolidated.

### B. The Pension Funds Satisfy the PSLRA's Requirements and Should Be Appointed as Lead Plaintiff

The PSLRA establishes the procedure for selecting a lead plaintiff in a class action lawsuit asserting claims under the federal securities laws. *See* 15 U.S.C. § 78u-4(a)(1)-(3)(B)(i). First, a plaintiff who files the initial action must, within twenty days of the filing of the action, publish a notice to the class informing class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the purported class period; and (4) the right to move the court to be appointed as lead plaintiff within sixty days of the publication of the notice. *See id*. § 78u-4(a)(3)(A)(i).

7

Within sixty days after publication of the notice, any member or group of members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they previously have filed a complaint in the action. *See id*. § 78u-4(a)(3)(A)-(B).

Second, the PSLRA provides that within ninety days after publication of the notice, the court shall consider any motion made by a class member or group of class members and shall appoint as lead plaintiff the class member or group of class members that the court determines to be "most capable of adequately representing the interests of class members." *Id*. § 78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that the court shall adopt a presumption that the most adequate plaintiff in any private action arising under the PSLRA is the movant or movant group that "has either filed the complaint or made a motion in response to a notice," "has the largest financial interest in the relief sought by the class," and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id*. § 78u-4(a)(3)(B)(iii)(I).

The Pension Funds believe they are the "most adequate plaintiff" because they: (1) timely moved for appointment; (2) possess the "largest financial interest in the relief sought by the class"; and (3) "otherwise satisf[y] the requirements of Rule 23" for purposes of this Motion. *Id*.

### 1. The Pension Funds Have Timely Moved for Appointment as Lead Plaintiff

Under the PSLRA, any class member or group of class members may move for appointment as lead plaintiff within sixty days of the publication of notice that the first action has been filed. *See id*. § 78u-4(a)(3)(A)(i)(II). Here, in connection with the filing of the first-filed *Building Trades* Action on October 30, 2025, Kessler Topaz published notice in *Business Wire* alerting investors to the pendency of the *Building Trades* Action and informing them of the

8

December 29, 2025 deadline to seek appointment as Lead Plaintiff.  *See* Amjed Decl., Ex. D.

Therefore, the Pension Funds' Motion is timely.

### 2. The Pension Funds Assert the Largest Financial Interest in the Relief Sought by the Class

The PSLRA establishes a presumption that the movant or movant group asserting the "largest financial interest in the relief sought by the class" and who "otherwise satisfies the requirements of Rule 23" is the most adequate plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Here, the Pension Funds suffered a loss of approximately $823,181.40 as calculated on a LIFO basis on their Class Period purchases of Avantor common stock.  *See* Amjed Decl., Exs. A & B.  To the best of the Pension Funds' knowledge, no other movant seeking Lead Plaintiff appointment has a larger financial interest in this litigation.  Accordingly, the Pension Funds believe that they have the largest financial interest of any qualified movant or movant group seeking Lead Plaintiff status and are the presumptive "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Cendant*, 264 F.3d at 243 ("The Reform Act establishes a presumption that the class member most capable of adequately representing the interests of class members is the shareholder with the largest financial stake in the recovery sought by the class.") (cleaned up).

### 3. The Pension Funds Satisfy the Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the class, the Pension Funds also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  At the lead plaintiff stage, movants need to make only a "*prima facie* showing of typicality and adequacy."  *Cendant*, 264 F.3d at 263.

### a) The Pension Funds' Claims Are Typical of Those of the Class

The typicality requirement "consider[s] whether the circumstances of the movant with the largest losses are markedly different or the legal theory upon which the claims of that movant are

based differ from that upon which the claims of other class members will perforce be based." *Id.* at 265 (cleaned up). Here, the Pension Funds satisfy the typicality requirement because, just like other members of the proposed class, they seek to recover losses on their Class Period investments in Avantor common stock incurred as a result of Defendants' misrepresentations and omissions.

> **b)  The Pension Funds Will Adequately Protect the Interests of the Class**

The adequacy element of Rule 23(a)(4) requires that the Lead Plaintiff "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In evaluating whether a movant or movant group satisfies the adequacy requirement, courts consider whether the movant or movant group "has the ability and incentive to represent the claims of the class vigorously, whether it has obtained adequate counsel, and whether there is a conflict between the movant's claims and those asserted on behalf of the class." *Cendant*, 264 F.3d at 265 (cleaned up).

The Pension Funds satisfy the adequacy requirement because their interest in vigorously pursuing claims against Defendants—given their substantial financial losses—is aligned with the interests of the class who were similarly harmed as a result of Defendants' false and/or misleading statements. The Pension Funds' commitment to the prosecution of this case is further reinforced by Building Trades having filed the first-filed *Building Trades* Action against Avantor, as well as Miami Beach F&P and Orlando's interest in partnering with Building Trades (given its substantial pre-suit investigation and efforts to protect the class) to jointly prosecute the Related Actions. There is no antagonism or potential conflict between the Pension Funds' interests and those of the other members of the class, and the Pension Funds are fully committed to zealously pursuing the claims on behalf of the class.

To further demonstrate their commitment to litigate this case in the best interests of the class, the Pension Funds submitted a Joint Declaration, which provides specific evidence of their

adequacy and ability to function as a cohesive group to zealously represent the interests of the class. *See* Amjed Decl., Ex. C. The Joint Declaration affirms the Pension Funds' commitment to fulfilling their duties and responsibilities to the class and highlights their experiences collaborating with other institutional investors in actions litigated under the PSLRA. *See id.* ¶¶ 5-7, 15, 17, 19. Accordingly, the Pension Funds have demonstrated that they understand and accept the fiduciary obligations they will assume if appointed as Lead Plaintiff and will vigorously represent the interests of all class members. *See* Amjed Decl., Exs. A & C.

Indeed, based on their past experience serving as lead plaintiffs, the Pension Funds are well aware of the duties the Lead Plaintiff has to oversee and supervise the litigation separate and apart from counsel. The Pension Funds have submitted sworn Certifications and a Joint Declaration attesting to their willingness and ability to fulfill those duties here. *See id.*; *see also Himes*, 2024 WL 4596235, at *4 ("In their sworn Joint Declaration, the two members of the [institutional investors group] describe their prior experience with PSLRA class actions and articulate their ongoing coordination with each other and in the oversight of counsel. . . . [T]he appointment of the two . . . funds as a group in no way erodes their ability to fulfill the task of lead plaintiff."). Specifically, as set forth in their Joint Declaration, the Pension Funds are sophisticated institutional investors that have extensive experience leading and representing classes of investors in securities litigation. *See* Amjed Decl., Ex. C ¶ 6. They have demonstrated their willingness, resources, and ability to fulfill the Lead Plaintiff's obligations under the PSLRA and their commitment to working cohesively together in the prosecution of this litigation. *See id.* ¶¶ 5-7, 11-12, 15, 17, 19. Indeed, the Pension Funds' decision to join together to prosecute this litigation is informed by their experience serving as representatives on behalf of injured investors. For example, Building Trades has served in a representative capacity in several federal securities class actions to protect the rights

11

and interests of injured investors. *See, e.g.*, *Shapiro v. TG Therapeutics, Inc.*, No. 22-cv-06106 (JSR) (S.D.N.Y.) (Building Trades served as an additional plaintiff); *Building Trades Pension Fund of W. Pa. v. Insperity, Inc.*, No. 20-cv-05635 (NRB) (S.D.N.Y.) (Building Trades filed initial complaint); *In re Textron Inc. Sec. Litig.*, No. 19-cv-07881 (DLC) (S.D.N.Y.) (Building Trades filed initial complaint). Additionally, Miami Beach F&P is currently serving as lead plaintiff alongside other institutional investors and has and obtained settlements on behalf of injured investors, including with Kessler Topaz or Saxena White serving as lead or co-lead counsel. *See In re Fiserv, Inc. Sec. Litig.*, No. 25-cv-06094 (JHR) (S.D.N.Y.) (Miami Beach F&P serving as lead plaintiff with another pension fund); *In re ASML Holding N.V. Sec. Litig.*, No. 24-cv-08664 (NRB) (S.D.N.Y.) (Miami Beach F&P serving as lead plaintiff with four other pension funds, with Kessler Topaz serving as co-lead counsel); *In re HD Supply Holdings, Inc. Sec. Litig.*, No. 17-cv-02587 (ELR) (N.D. Ga.) ($50 million recovery serving as lead plaintiff with two other pension funds, with Saxena White serving as lead counsel); *City Pension Fund for Firefighters & Police Officers in City of Mia. Beach v. Aracruz Celulose S.A.*, No. 08-cv-23317 (JAL) (S.D. Fla.) ($37.5 million recovery serving as lead plaintiff, with Saxena White serving as lead counsel).

Orlando also is serving or has previously served as lead plaintiff on behalf of injured investors on several prior occasions. *See e.g.*, *Prime v. Manhattan Assocs., Inc.*, No. 25-cv-00992-TRJ (N.D. Ga.) (Orlando serving as lead plaintiff); *Operating Eng'rs Constr. Indus. & Miscellaneous Pension Fund v. Neogen Corp.,* No. 25-cv-00802 (HYJ) (W.D. Mich.) (Orlando serving as lead plaintiff with other pension funds, with Saxena White serving as co-lead counsel). Additionally, Orlando Police is actively serving as lead plaintiff in at least one other federal securities class action. *See e.g., In re Vertiv Holdings Co. Sec. Litig.*, No. 22-cv-03572 (GHW)

(S.D.N.Y.) (Orlando Police serving as lead plaintiff with four other institutional investors, with Saxena White serving as co-lead counsel).

Moreover, prior to seeking appointment, representatives of the Pension Funds participated in a conference call during which they discussed, among other things, the claims against Defendants, their strategy for prosecuting the litigation, the benefits that the class will receive from the leadership of institutional investors with prior experience serving as Lead Plaintiff under the PSLRA, and the measures they have taken and will take to ensure that the class's claims will be zealously and efficiently litigated. *See* Amjed Decl., Ex. C ¶¶ 12-14. To that end, the Pension Funds discussed the importance of joint decision-making, open communication, and the ability to confer, with or without counsel, on short notice in order to make timely decisions. *See id.* In addition, the Pension Funds directed their proposed Lead Counsel to enter into a Joint Prosecution Agreement outlining Lead Counsel's respective responsibilities and ensures there will be no duplication of effort and that the claims of the class are prosecuted vigorously yet efficiently and in a cost-effective manner, and which can be provided to the Court *in camera*. *See id.* ¶ 17. Through these measures and others, the Pension Funds have sought to ensure the class will receive the best possible representation.

The Pension Funds have also demonstrated their adequacy through their selection of Kessler Topaz and Saxena White to serve as Lead Counsel for the class. As discussed more fully below, Kessler Topaz and Saxena White are highly qualified and experienced in the area of securities class action litigation and have repeatedly demonstrated their ability to prosecute complex actions in an efficient, effective, and professional manner, jointly and separately.

In addition to satisfying the requirements of Rule 23, as a group of sophisticated institutional investors that collectively manage more than $2 billion in assets, the Pension Funds

13

are the quintessential Lead Plaintiff that Congress sought, through the enactment of the PSLRA, to encourage to assume a more prominent role in securities litigation. *See* H.R. Conf. Rep. No. 104-369, at 34, *reprinted in* 1995 U.S.C.C.A.N. at 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."); *see also Cendant*, 264 F.3d at 273 ("[T]he purpose of the [PSLRA] was to encourage institutional investors to serve as lead plaintiff . . . .") (citations omitted). Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation. *See* H.R. Conf. Rep. No. 104-369, at 34-35, *reprinted in* 1995 U.S.C.C.A.N. at 733-34.

In sum, the Pension Funds have demonstrated their willingness, resources, experience, and commitment to working closely with one another to supervise Lead Counsel and obtain the best possible recovery for the class.

### C.    The Court Should Approve the Pension Funds' Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the class, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *see also Cendant*, 264 F.3d at 276 (noting that the PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention"). Courts should not disturb the lead plaintiff's choice of counsel unless it is necessary to protect the interests of the class. *See Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009) ("[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice.") (citations omitted). Here, the Pension Funds have selected and retained

Kessler Topaz and Saxena White to serve as Lead Counsel for the class. The Pension Funds' selection of counsel should be approved. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).

Kessler Topaz, which is headquartered in this District, specializes in prosecuting complex class action litigation and is one of the leading law firms in its field. *See* Amjed Decl., Ex. E (Kessler Topaz's Firm Profile). The firm is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors across the country and in this District, including: *In re Tyco International, Ltd. Securities Litigation*, No. 02-md-01335 (PB) (D.N.H.) ($3.2 billion recovery); *In re Bank of America Corp. Securities, Derivative, & Employee Retirement Income Security Act (ERISA) Litigation*, No. 09-md-02058 (PKC) (S.D.N.Y.) ($2.425 billion recovery); *In re Wachovia Preferred Securities & Bond/Notes Litigation*, No. 09-cv-06351 (RJS) (S.D.N.Y.) ($627 million recovery); *In re Lehman Brothers Equity/Debt Securities Litigation*, No. 08-cv-05523 (LAK) (S.D.N.Y.) ($615 million recovery); and *SEB Inv. Mgmt. AB v. Endo Int'l, plc*, No. 17-cv-03711 (TJS) (E.D. Pa.) ($82.5 million recovery). Additionally, Kessler Topaz is currently serving as lead or co-lead counsel in several high-profile securities class actions across the country and in this District, including: *Sjunde AP-Fonden v. Goldman Sachs Group, Inc.*, No. 18-cv-12084 (VSB) (S.D.N.Y.); *In re NVIDIA Corp. Sec. Litig.*, No. 18-cv-07669 (HSG) (N.D. Cal.); *City of Coral Springs Police Officers' Pension Plan v. Apple Inc.*, No. 25-cv-06252 (NW) (N.D. Cal.); *In re FMC Corporation Securities Litigation*, No. 23-cv-04398 (KNS) (E.D. Pa.); *Roofers Local No. 149 Pension Fund v. GSK plc*, No. 25-cv-00618 (CFK) (E.D. Pa.); and *New England Teamsters Pension Fund v. West Pharmaceutical Services, Inc.*, No. 25-cv-02285 (JS) (E.D. Pa.). Kessler Topaz also obtained a rare jury verdict in investors' favor after a week-long trial in *In re Longtop Financial Technologies Limited Securities Litigation*, No. 11-cv-03658 (SAS) (S.D.N.Y.)—one of just thirteen securities

15

class actions at the time to reach a verdict since enactment of the PSLRA in 1995 (based on post-enactment conduct).

Saxena White also has extensive experience successfully prosecuting securities class actions as lead counsel. *See* Amjed Decl., Ex. F (Saxena White Firm Résumé). Saxena White's securities litigation track record includes a $210 million recovery in *In re Wilmington Trust Securities Litigation*, No. 10-cv-00990 (ER) (D. Del.); a $135 million recovery in *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita, Inc.*, No. 17-cv-00304 (WJM) (D. Colo.); a $73 million recovery in *In re Rayonier Inc. Securities Litigation*, No. 14-cv-01395 (TJC) (M.D. Fla.); a $65 million recovery in *Black v. Snap Inc.*, No. 21-cv-08892 (GW) (C.D. Cal.) (pending final approval); a $63 million recovery in *Plymouth County Retirement System v. Patterson Companies, Inc.*, No. 18-cv-00871 (MJD) (D. Minn.); a $55 million recovery in *Leventhal v. Chegg, Inc.*, No. 21-cv-00953 (PCP) (N.D. Cal.); and a $17.5 million settlement in *Teamsters Local 456 Pension Fund v. Universal Health Services, Inc.*, No. 17-cv-02817 (E.D. Pa.). Saxena White also has achieved significant recoveries through derivative actions. *See, e.g.*, *In re Wells Fargo & Co. S'holder Derivative Litig.*, No. 16-cv-05541 (JST) (N.D. Cal.) (settlement valued at $240 million, the largest insurer-funded monetary recovery in a derivative settlement in history); *Bloom v. Anderson (FirstEnergy Corp. derivative litigation)*, No. 20-cv-04534 (S.D. Ohio) ($180 million settlement in action involving a corruption and bribery scheme, one of the largest shareholder derivative settlements in history).

Additionally, Kessler Topaz and Saxena White have experience working together to prosecute class action lawsuits under the federal securities laws. *See, e.g.*, *SEB Inv. Mgmt. AB, v. Wells Fargo & Co.*, No. 22-cv-03811 (TLT) (N.D. Cal.) ($85 million settlement pending final approval; Kessler Topaz serving as lead counsel and Saxena White as counsel for additional class

16

representative); *In re Integra Lifesciences Holdings Corp. Sec. Litig.*, No. 23-cv-20321 (MAS) (D.N.J.) (Kessler Topaz and Saxena White as co-lead counsel); *In re Apache Corp. Sec. Litig.*, No. 21-cv-00575 (GCH) (S.D. Tex.) ($65 million recovery, with Kessler Topaz and Saxena White serving as co-lead counsel); *In re Sadia S.A. Sec. Litig.*, No. 08-cv-09528 (SAS) (S.D.N.Y.) ($27 million recovery; with Kessler Topaz and Saxena White serving as co-lead counsel); and *City of L.A. v. Bankrate, Inc.*, No. 14-cv-81323 (DMM) (S.D. Fla.) ($20 million recovery, with Kessler Topaz serving as lead counsel and Saxena White serving as liaison counsel).

Thus, the Court can be assured that the class will receive the highest caliber of legal representation should it approve the Pension Funds' selection of Kessler Topaz and Saxena White.

## IV.    CONCLUSION

For the reasons set forth above, the Pension Funds respectfully request that the Court: (1) consolidate the Related Actions; (2) appoint the Pension Funds as Lead Plaintiff; (3) approve their selection of Kessler Topaz and Saxena White as Lead Counsel; and (4) grant such other relief as the Court may deem just and proper.

Dated: December 29, 2025

Respectfully submitted,

*s/ Naumon A. Amjed*
Naumon A. Amjed (PA #309520)
**KESSLER TOPAZ MELTZER**
**& CHECK, LLP**
Darren J. Check (PA #86279)
Ryan T. Degnan (PA #309305)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com

**SAXENA WHITE P.A.**
Maya Saxena (*pro hac vice* motion
forthcoming)

17

Lester R. Hooker (*pro hac vice* motion forthcoming)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
lhooker@saxenawhite.com

-and-

Marco A. Dueñas (*pro hac vice* motion forthcoming)
10 Bank Street, Suite 882
White Plains, NY 10606
Telephone: (914) 437-8551
Facsimile: (888) 631-3611
mduenas@saxenawhite.com

*Counsel for Proposed Lead Plaintiff the Pension Funds and Proposed Lead Counsel for the Class*

18

**CERTIFICATE OF SERVICE**

I, Naumon A. Amjed, hereby certify that on December 29, 2025, I caused a true and correct copy of the foregoing Memorandum of Law in Support of the Motion of the Pension Funds for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel to be filed electronically with the Clerk of the Court using the ECF system, and it is available for viewing and downloading from the ECF system.  Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

*s/ Naumon A. Amjed*
Naumon A. Amjed (PA #309520)
**KESSLER TOPAZ MELTZER**
 **& CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com

*Counsel for Proposed Lead Plaintiff the Pension*
*Funds and Proposed Lead Counsel for the Class*

19