# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BUILDING TRADES PENSION FUND OF WESTER PENNSYLVANIA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> AVANTOR, INC. MICHAEL STUBBLEFIELD, and R. BRENT JONES, <br><br> Defendants. | Case No. 2:25-cv-06187 <br><br> <u>CLASS ACTION</u> |
| CITY OF PONTIAC REESTABLISHED GENERAL EMPLOYEE'S RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> AVANTOR, INC. MICHAEL STUBBLEFIELD, R. BRENT JONES, JONATHAN PEACOCK, and STEVEN ECK, <br><br> Defendants. | Case No. 2:25-cv-06686 <br><br> <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF THE INSTITUTIONAL INVESTORS'
MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS, APPROVAL OF SELECTION
<u>OF CO-LEAD COUNSEL, AND CONSOLIDATION OF THE RELATED ACTIONS</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................... 1

II.     BACKGROUND ............................................................................................ 4

III.    ARGUMENT ................................................................................................. 5

     A.  The Institutional Investors Should Be Appointed Lead Plaintiffs ............................... 5

         1.  The Institutional Investors' Motion is Timely ........................................................ 6

         2.  The Institutional Investors Have the Largest Financial Interest in the Relief Sought by the Proposed Class .............................................................. 7

         3.  The Institutional Investors Satisfy the Requirements of Rule 23 ......................... 7

         4.  The Institutional Investors Are Precisely the Type of Lead Plaintiffs Contemplated By the PSLRA .................................................................. 10

     B.  The Court Should Approve the Institutional Investors' Choice of Co-Lead Counsel 12

     C.  The Related Actions Should Be Consolidated ......................................................... 14

IV.    CONCLUSION ............................................................................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arbitrage Fund v. Toronto-Dominion Bank*,
No. 1:23-cv-02763, 2023 WL 5550198 (D.N.J. Aug. 29, 2023) ..............................................10

*Bristol Cnty. Ret. Sys. v. Allscripts Healthcare Sols., Inc.*,
No. 1:12-cv-3297, 2012 WL 5471110 (N.D. Ill. Nov. 9, 2012) ............................................12

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d. Cir. 2001) .....................................................................................4, 8, 10

*In re Herley Indus., Inc.*,
No. 2:06-cv-02596, 2010 WL 176869
(E.D. Pa. Jan. 15, 2010) ......................................................................................................12

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
259 F.3d 154 (3d Cir. 2001) ...................................................................................................8

*Ret. Sys. v. Energy Transfer LP*,
No. 2:20-cv-00200, 2020 WL 815136
(E.D. Pa. Feb. 19, 2020) ...............................................................................................10, 12

*United Ass'n of Plumbers & Pipefitters, Journeymen, Loc. #38 Defined Benefit
Pension Plan v. Syneos Health, Inc.*,
No. 1:23-cv-6548, 2023 WL 6622547 (S.D.N.Y. Oct. 11, 2023) .......................................9, 12

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
No. 2:13-cv-06731, 2014 WL 1395059 (E.D. Pa. Apr. 10, 2014) ...................................10, 12

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78j(b) ...............................................................................................................................1, 14
§78t(a) ................................................................................................................................1, 14
§78u-4, *et seq*. ........................................................................................................... *passim*

**Federal Rules of Civil Procedure**
Rule 23 ........................................................................................................................ *passim*
Rule 42(a) ...........................................................................................................................1, 4, 14

**17 C.F.R.**
§240.10b-5 .................................................................................................................................1

MercLan S.A. (MercLan - Very Defensive Portfolio, MercLan - Growth Portfolio, MercLan - Defensive Portfolio, MercLan - Balanced Portfolio), MercLan Institutional Fund (MercLan - Institutional Equity Fund DBI-RDT), and Kempen International Funds (Kempen International Funds - MercLan Global Equity, Kempen International Funds - MercLan Patrimonium) (collectively, "MercLan/Kempen Funds") and Macomb County Employees' Retirement System ("Macomb County," and together with the MercLan/Kempen Funds, the "Institutional Investors") respectfully submit this Memorandum of Law in support of their Motion for: (i) appointment as Lead Plaintiffs pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (ii) approval of their selection of DiCello Levitt LLP ("DiCello Levitt") and Labaton Keller Sucharow LLP ("Labaton") as Co-Lead Counsel for the proposed Class; (iii) consolidation of the above-captioned securities class actions (the "Related Actions") pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)"); and (iv) for any such further relief as the Court may deem just and proper.

## I.    INTRODUCTION

On October 30, 2025, the first of the above-captioned securities class actions was filed, alleging violations of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b), 78t(a), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5, against Avantor, Inc. ("Avantor" or the "Company") and certain of its senior executives (collectively, "Defendants").[1] The first-filed *Building Trades* Action was brought on

---

[1] Two related securities class actions with substantially similar allegations are currently pending before this Court. *See Building Trades Pension Fund of W. Pennsylvania v. Avantor, Inc., et al*., No. 2:25-cv-06187-GAM (E.D. Pa., filed Oct. 30, 2025) ("*Building Trades* Action"); *City of Pontiac Reestablished Gen. Emps.' Ret. Sys. v. Avantor, Inc., et al*., No. 2:25-cv-06686-GAM (E.D. Pa., filed Nov. 25, 2025) ("*City of Pontiac* Action," and with the *Building Trades* Action, "Related Actions"). The allegations in the Related Action are substantially similar, but the *City of*

1

behalf of all investors that purchased or otherwise acquired Avantor common stock between March 5, 2024 through October 28, 2025, both dates inclusive (the "Class Period").

The Related Actions allege that, throughout the Class Period, Defendants misled investors by failing to disclose that: (a) Avantor had severely underinvested in its supply chain infrastructure, inventory management systems, and customer service; (b) this lack of investment caused delayed and partial order fulfillment of critical lab products for key customers; (c) these issues resulted in customer attrition and loss of market share to competitors; (d) as a result of the foregoing, goodwill assigned to the VWR acquisition was materially overstated; and (e) Defendants' positive statements about the ABS strategy, competitive positioning, inventory management, customer service, and business prospects were materially false, misleading, or lacked a reasonable basis.

The PSLRA governs the selection of the lead plaintiff in class actions asserting claims under the Exchange Act. Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. §78u-4(a)(3)(B)(i). In that regard, the Court is to appoint as Lead Plaintiff the movant or a group of movants that: (i) timely make a motion under the PSLRA's sixty-day deadline; (ii) assert the largest financial interest in the litigation; and (iii) satisfy the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).

Here, the Institutional Investors meet these requirements because they timely filed this Motion, and, by virtue of the substantial loss of approximately $28,778,300 million as calculated under a last-in, first-out ("LIFO") basis that they incurred on their investments in Avantor common

---

*Pontiac* Action asserts claims against additional defendants and expands the allegations to include allegations that Defendants fraudulently misled Avantor's investors about supply chain failures resulting in customer attrition and materially overstated goodwill in connection with its acquisition of VWR Corporation ("VWR").

stock during the Class Period, to the best of their counsel's knowledge, they have the largest financial interest in this litigation. *See infra*, Section III.A.2

In addition to asserting the largest financial interest, the Institutional Investors satisfy the relevant requirements of Rule 23 because their claims are typical of those of all members of the Class, and they will fairly and adequately represent the interests of the Class. As set forth in greater detail in the Joint Declaration submitted herewith, the Institutional Investors, having experience serving as lead plaintiff in securities class actions, fully understand the duties and obligations to the Class under the PSLRA and are willing and able to undertake those responsibilities to ensure the vigorous prosecution of this action. *See* Declaration of John C. Coyle in Support of The Institutional Investors' Motion for Appointment as Lead Plaintiffs, Approval of Selection of Co-Lead Counsel, and Consolidation of the Related Actions ("Coyle Decl."), Ex. D, Joint Decl. ¶¶5-7. Before seeking appointment as Lead Plaintiffs, representatives of the Institutional Investors conferred together and discussed, among other things, the possibility of seeking appointment jointly and whether doing so would be in their, and the proposed Class's best interests. *See id*. ¶¶5-6. Following those deliberations, the Institutional Investors independently determined that it was in each of their best interests and in the best interests of the proposed Class for the Institutional Investors to partner with each other to lead this case. *See id*. ¶6.

The Institutional Investors have further demonstrated their adequacy through their selection of DiCello Levitt and Labaton to serve as Co-Lead Counsel for the Class. Both firms are highly experienced in prosecuting claims under the federal securities laws, and counsel in this case have previously worked together in shareholder litigation. As the "most adequate plaintiff" under the PSLRA, the Court should defer to the Institutional Investors' selection of DiCello Levitt and Labaton as Co-Lead Counsel for the proposed Class. *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

Moreover, as sophisticated institutional investors, the Institutional Investors are the quintessential Lead Plaintiff envisioned by Congress, and their appointment would therefore fulfill this critical legislative purpose. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), as reprinted in 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *In re Cendant Corp. Litig.*, 264 F.3d 201, 244 (3d. Cir. 2001) (identifying Congress's preference for institutional investors as lead plaintiffs).

Finally, the Institutional Investors respectfully request that the Court consolidate the Related Actions. As the complaints in both cases allege substantially similar claims against overlapping defendants, with substantially overlapping facts and circumstances, consolidation of these Related Actions is appropriate under Rule 42(a).

Based on the Institutional Investors' significant financial interest in the outcome of this action, their satisfaction of the applicable Rule 23 requirements, and their ability to jointly oversee the prosecution of the litigation in a cohesive manner, the Institutional Investors respectfully request that the Court grant their motion and appoint them Lead Plaintiffs.

## II.   BACKGROUND

Avantor is a laboratory supply company based in Radnor, Pennsylvania. Avantor's "transformational" acquisition of VWR in 2017 turned the Company into a global distribution platform serving hundreds of thousands of customers worldwide with millions of products. Avantor tried to manage its complex supply chain through a set of proprietary operating practices and procedures called the Avantor Business System ("ABS").

The Related Actions allege that, throughout the Class Period, Defendants misled investors by failing to disclose that: (a) Avantor had severely underinvested in its supply chain infrastructure, inventory management systems, and customer service; (b) this lack of investment caused delayed

4

and partial order fulfillment of critical lab products for key customers; (c) these issues resulted in customer attrition and loss of market share to competitors; (d) as a result of the foregoing, goodwill assigned to the VWR acquisition was materially overstated; and (e) Defendants' positive statements about the ABS strategy, competitive positioning, inventory management, customer service, and business prospects were materially false, misleading, or lacked a reasonable basis.

Investors began to learn the truth about Avantor's supply chain failures and customer defections through a series of disclosures culminating on October 29, 2025. On that date, Avantor reported a $712 million net loss for the third quarter of 2025. Avantor also disclosed that it had faced a decline in organic revenue primarily related to "operational headwinds that are impacting our throughput, including raw material availability and equipment uptime." The Company admitted that inventory challenges were caused by a need to improve data accuracy, fulfillment speed, on-time performance, and targeted plant upgrades to address reliability at aging sites. The Company further reported a goodwill impairment charge of $785 million in connection with its Lab Solutions segment, which was due in part to the loss of several large accounts to a major competitor. On this news, the price of Avantor common stock declined $3.50 per share, or more than 23%, to close at $11.58 per share on October 29, 2025.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, the Institutional Investors and other proposed Class members have suffered significant losses and damages.

## III.    ARGUMENT

### A.    The Institutional Investors Should Be Appointed Lead Plaintiffs

The PSLRA establishes the procedure for selecting the lead plaintiff in class actions arising under the federal securities laws. *See* 15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i). First, the plaintiff who files the action must publish a notice within twenty days of

filing the action informing class members of: (i) the pendency of the action; (ii) the claims asserted therein; (iii) the purported class period; and (iv) the right to move the Court to be appointed as lead plaintiff within sixty days of the publication of the notice. 15 U.S.C. §78u-4(a)(3)(A)(i).

Second, the PSLRA provides that the Court shall consider any timely motion made by a class member and shall appoint as Lead Plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is:

> the person or group of persons that:
>
> (aa) has either filed the complaint or made a motion in response to a notice . . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).

### 1.    The Institutional Investors' Motion is Timely

Under the PSLRA, any class member may move for appointment as Lead Plaintiff within sixty days of the publication of notice of the first-filed action. *See* 15 U.S.C. §78u-4(a)(3)(A)-(B). Here, on October 30, 2025, counsel in the *Building Trades* Action published a notice on *Business Wire*, which alerted investors to the pendency of the action and set December 29, 2025, as the deadline by which any class member may move the Court to be appointed as lead plaintiff. *See*

Coyle Decl., Ex. A.[2] Accordingly, the Institutional Investors satisfy the PSLRA's sixty-day requirement through the filing of this Motion.

**2.     The Institutional Investors Have the Largest Financial Interest in the Relief Sought by the Proposed Class**

To be eligible for the "most adequate plaintiff" presumption, a movant must also possess the "largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb). As shown by the PSLRA certifications and the loss charts submitted by the Institutional Investors, they purchased 3,348,071 shares of Avantor common stock during the Class Period and suffered a loss of $ 28,778,300 as calculated on a LIFO basis. *See* Coyle Decl., Exs. B and C. To the best of the Institutional Investors' counsel's knowledge, there are no other applicants seeking appointment as Lead Plaintiff that claims a larger financial interest in relief sought by the class in the litigation. Therefore, the Institutional Investors satisfy the PSLRA's prerequisite of having the largest financial interest of any qualified movant seeking Lead Plaintiff status.

**3.     The Institutional Investors Satisfy the Requirements of Rule 23**

In addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ.

---

[2] On November 25, 2025, counsel in the *City of Pontiac* Action caused notice to be published on *Business Wire* alerting investors to the pendency of that action, and reiterating the December 29, 2025, deadline to seek appointment as Lead Plaintiff. The deadline to move for Lead Plaintiff does not change even when another complaint is filed. *See* 15 U.S.C. § 78u-4(a)(3)(A)(ii) ("If more than one action on behalf of a class asserting substantially the same claim or claims . . . is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published[.]").

P. 23(a)(3)-(4). On a motion to serve as lead plaintiff, a movant need only make a preliminary showing that it satisfies Rule 23's typicality and adequacy requirements. *See In re Cendant*, 264 F.3d at 263 (finding that at the lead plaintiff stage, movants are only required to make a "prima facie showing of typicality and adequacy").

The Institutional Investors' claims are typical of the claims of other Class members. The typicality requirement is satisfied if the movant's claims are not "markedly different" than those of other Class members and the legal theories upon which those claims are based do not differ. *Id.* at 265; *see also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001), as amended (Oct. 16, 2001) ("If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences."). The Institutional Investors satisfy the typicality requirement because, like all other proposed Class members, they purchased Avantor common stock during the Class Period at prices that were artificially inflated through Defendants' alleged false and misleading statements, and thereby suffered damages.[3] Indeed, the Institutional Investors' claims arise from the same facts and involve substantially the same legal arguments as those of the other Class members. *See In re Cendant*, 264 F.3d at 265. Thus, the Institutional Investors' claims are typical of those of other members of the proposed Class.

The Institutional Investors likewise satisfy the adequacy requirement of Rule 23. "In assessing whether the movant satisfies Rule 23's adequacy requirement, courts should consider whether it has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims

---

[3] The MercLan/Kempen Funds have also submitted the declarations from Johan Verbist and Cathy Arendt explaining that they are the proper legal entities to be named a plaintiff in this action and have standing to bring the securities fraud claims in this action.  *See* Coyle Decl., Exs. H, I.

8

and those asserted on behalf of the class." *Id*. (citations and internal quotations omitted). The Institutional Investors satisfy these elements because their substantial financial stake in the litigation provides them with the incentive to vigorously represent the claims of the proposed Class. The Institutional Investors' interests are directly aligned with those of the other members of the proposed Class and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between the Institutional Investors and other members of the proposed Class.

Further demonstrating their ability to litigate this case in the best interests of the proposed Class, the Institutional Investors submitted a Joint Declaration, which describes how and why they came to work together in this action, and affirms the Institutional Investors' understanding of the duties owed to the proposed Class. *See* Coyle Decl., Ex. D, ¶¶4-7. Through the Joint Declaration and their certifications, the Institutional Investors have demonstrated that they understand and accept the fiduciary obligations they will assume if appointed as Lead Plaintiffs and will zealously represent the interests of all members of the proposed Class. *See* Coyle Decl., Exs. B and C.

The Institutional Investors have also demonstrated their adequacy through their selection of DiCello Levitt and Labaton as Co-Lead Counsel to represent the proposed Class in this case. As discussed more fully below, DiCello Levitt and Labaton are highly qualified and experienced in securities class action litigation and have repeatedly demonstrated an ability to conduct such litigation effectively. Accordingly, as demonstrated herein, the Institutional Investors satisfy the typicality and adequacy requirements of Rule 23.

### 4.     The Institutional Investors Are Precisely the Type of Lead Plaintiffs Contemplated By the PSLRA

As sophisticated institutional investors and prior experience serving as a lead plaintiff under the PSLRA,[4] the Institutional Investors are the prototypical investors Congress sought to encourage to lead securities class actions. *See* H.R. Conf. Rep. No. 104-369, at \*34, as reprinted in 1995 U.S.C.C.A.N. at 733 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *In re Cendant*, 264 F.3d at 244 (identifying Congress' preference for institutional investors as lead plaintiffs).

Further, the Institutional Investors understand the duties and responsibilities with which a lead plaintiff is charged under the PSLRA, including the obligation to oversee and supervise the litigation separate and apart from counsel. As set forth in their Joint Declaration, the Institutional Investors have attested to their willingness and ability to fulfill those duties and have demonstrated their commitment to working cohesively in the prosecution of this action. *See* Coyle Decl., Ex. D. The text of the PSLRA expressly permits the appointment of a group of class members to serve as lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *id*. §78u-4(a)(3)(B)(i). Accordingly, courts in this District, including this Court, as well as others in the Third Circuit have repeatedly recognized the propriety of appointing small groups of investors that demonstrate they can function cohesively to effectively manage the litigation.[5]

---

[4] *See, e.g.*, *United Ass'n of Plumbers & Pipefitters, Journeymen, Loc. #38 Defined Benefit Pension Plan v. Syneos Health, Inc.*, No. 1:23-cv-6548, 2023 WL 6622547, at \*2 (S.D.N.Y. Oct. 11, 2023).

[5] *See Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, No. 2:20-cv-00200, 2020 WL 815136, at \*5 (E.D. Pa. Feb. 19, 2020) (McHugh, J.) (appointing a group of five institutional investors); *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. 2:13-cv-06731, 2014 WL 1395059, at \*7 (E.D. Pa. Apr. 10, 2014) (appointing a group of four institutional investors); *Arbitrage Fund v. Toronto-Dominion Bank*, No. 1:23-cv-02763 (RBK/AMD), 2023 WL 5550198,

10

As discussed in the Joint Declaration, the Institutional Investors comprise a small, cohesive group of sophisticated institutional investors that determined their joint appointment as Lead Plaintiff would advance the Class's best interests. *See id*. ¶¶4-6. Given the magnitude of their losses, their prior experience serving as lead plaintiff, and the importance of the claims asserted against Defendants, the Institutional Investors believe that this case should be prosecuted by sophisticated institutional investors with significant resources and a financial interest substantial enough to ensure that the claims are litigated vigorously, efficiently, and in the best interests of the Class. *See id*. ¶¶4-5.

Through the course of their evaluation of this case and recognizing the benefits that could be realized by working together, the Institutional Investors each expressed an interest in cooperating with each other in seeking appointment as Lead Plaintiff to ensure that the claims are litigated vigorously, efficiently, and in the best interests of the class. *See id*. ¶¶4-5. The Institutional Investors agreed that their partnership would benefit the representation of the Class in this action. The Institutional Investors understand that their joint leadership would allow for the benefits of joint decision-making and the sharing of experiences and resources, all of which would benefit the Class. *See id*. Significantly, their Joint Declaration also demonstrates that the Institutional Investors have already taken, and will continue to take, numerous meaningful measures to ensure the vigorous prosecution of this action and oversee their counsel. *See id*. ¶¶4-7. Specifically, before seeking appointment as Lead Plaintiff, representatives of the Institutional Investors met and discussed together, among other things, the possibility of collaborating to jointly prosecute this case. *See id*. ¶¶4-5. The Institutional Investors independently determined that it was in each of

---

at *5 (D.N.J. Aug. 29, 2023) (appointing as lead plaintiff four institutional investors who "have both the ability and incentive to represent the purported class vigorously").

their best interests and the Class's best interests for the Institutional Investors to partner with each other in this case. *See id*. Further, the Institutional Investors are aware that DiCello Levitt and Labaton have extensively investigated the claims against Avantor, and that Labaton filed a complaint expanding the allegations made in a previously filed complaint. *See id*. ¶7.

The evidence submitted by the Institutional Investors establishing their commitment to zealously and efficiently representing the interests of the proposed Class is more than sufficient to satisfy the adequacy and typicality requirements here. *See, e.g.*, *Energy Transfer*, 2020 WL 815136, at *5 (appointing a group of five institutional investors based on attestations in a joint declaration regarding the group's willingness to prosecute the case in the best interest of all class members, which the court determined "must be accorded substantial weight"); *DFC Glob*., 2014 WL 1395059, at *7 (appointing a group of four institutional investors that "submitted a joint declaration" in which the members "agree[d] to take full responsibility for providing fair and adequate representation and overseeing counsel and espouse[d] its commitment to prosecuting this litigation vigorously and efficiently"); *Bristol Cnty. Ret. Sys. v. Allscripts Healthcare Sols., Inc*., No. 1:12-cv-3297, 2012 WL 5471110, at *6 (N.D. Ill. Nov. 9, 2012) (appointing group of institutions that "conferred with one another . . . [and] decided to move together in seeking appointment as lead plaintiff after due consideration and deliberation" (alteration in original)).

In the end, the Institutional Investors are sophisticated institutional investors with the experience and resources sufficient to vigorously prosecute the action and supervise class counsel.

**B.    The Court Should Approve the Institutional Investors' Choice of Co-Lead Counsel**

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to this Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). "Unless a lead plaintiff's selection of counsel would fail to protect the interest of the class, a court should not interfere with the selection

12

process." *In re Herley Indus., Inc.*, No. 2:06-cv-02596, 2010 WL 176869, at *5 (E.D. Pa. Jan. 15, 2010).

Here, the Institutional Investors have selected the DiCello Levitt and Labaton law firms as Co-Lead Counsel to represent the proposed Class. As set forth in its firm resume submitted herewith (*see* Coyle Decl. Ex. F), DiCello Levitt attorneys are highly experienced in litigating complex class actions. *See*, *e.g.*, *United Ass'n of Plumbers & Pipefitters, Journeymen, Loc. #38 Defined Benefit Pension Plan v. Syneos Health, Inc.*, No. 1:23-cv-6548, 2023 WL 6622547, at *2 (S.D.N.Y. Oct. 11, 2023) (finding that DiCello Levitt "has the knowledge, experience, and resources to serve as lead counsel here"); *Saleh v. AstraZeneca PLC, et al.*, No. 2:24-cv-11021-JFW-AS, ECF. 40 at 8 (C.D. Cal. Mar. 21, 2025) ("DiCello has extensive expertise and experience in the field of securities litigation and has successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of defrauded investors.") (Coyle Decl., Ex. E). For example, DiCello Levitt attorneys have led or played a critical role in securing billions of dollars in recoveries in securities fraud class and individual actions, including, among others, *Jones, et al. v. Pfizer Inc.*, et al., No. 10-cv-3864 (S.D.N.Y.) ($400 million recovery); *In re Cardinal Health, Inc. Sec. Litig.*, No. 04-cv-575 (S.D. Ohio) ($600 million recovery); *Bennett v. Sprint Nextel Corp.*, No. 09-cv-2122 (D. Kan.) ($131 million recovery); *In re CIT Grp. Inc. Sec. Litig.*, No. 1:08-cv-06613 (S.D.N.Y.) ($75 million recovery); and *In re MGM Mirage Sec. Litig.*, No. 2:09-cv-1558 (D. Nev.) ($75 million recovery).

Likewise, Labaton has significant experience in prosecuting securities class actions and has excelled as lead counsel in numerous landmark securities class actions throughout the United States on behalf of defrauded investors. Labaton served as a lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 1:04-cv-08141 (S.D.N.Y.), in which it

13

achieved a recovery totaling more than $1 billion for injured investors; secured a $294.9 million recovery in *In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation*, No. 08-md-1963 (S.D.N.Y.), in which it served as co-lead counsel; and secured a $117.5 million settlement in *In re Mercury Interactive Corp. Securities Litigation*, No. 5:05-cv-03395 (N.D. Cal.). In addition, Labaton was a lead counsel in *In re Countrywide Financial Corp. Securities Litigation*, No. 2:07-cv-05295 (C.D. Cal.), which achieved a settlement of $624 million—one of the largest securities fraud settlements arising from the financial crisis of 2007 and 2008, and also secured a $160.5 million settlement as lead counsel in *In re Broadcom Corp. Class Action Litigation*, No. 2:06-cv-05036 (C.D. Cal.). Labaton presently serves as lead and co-lead counsel in several significant investor class actions. *See* Coyle Decl. Ex. G.

Accordingly, the Court should approve the Institutional Investors' selection of Co-Lead Counsel for the proposed Class.

## C.    The Related Actions Should Be Consolidated

Consolidation pursuant to Rule 42(a) is proper when actions involve common questions of law and fact. *See* Fed. R. Civ. P. 42(a). Each of the Related Actions presents substantially similar factual and legal issues, as they both allege violations of Sections 10(b) and 20(a) of the Exchange Act, present the same or similar theories for recovery, and are based on the same allegedly wrongful course of conduct. Specifically, each action asserts that Avantor and its senior executives made materially false and misleading statements or omissions regarding, among other things, (1) Avantor's competitive positioning was weaker than Defendants had publicly represented; (2) the negative effects from increased competition Avantor was experiencing; (3) Avantor's severe underinvestment in its supply chain infrastructure, inventory management systems, and customer service which caused delayed and partial order fulfillment of critical lab products for key customers; and (4) the materially overstatement of the Company's goodwill assigned to the VWR

14

acquisition. As such, the Related Actions present virtually identical factual and legal issues arising out of the same alleged misconduct by overlapping defendants during substantially overlapping class periods.

Because these Related Actions arise from the same facts and circumstances and involve the same subject matter, consolidation of these cases under Rule 42(a) is appropriate.

## IV.    CONCLUSION

For all the foregoing reasons, the Institutional Investors respectfully request that the Court: (i) appoint them as Lead Plaintiffs; (ii) approve their selection of DiCello Levitt and Labaton to serve as Co-Lead Counsel for the proposed Class; (iii) consolidate the above-captioned Related Actions; and (iv) grant any such additional or further relief as the Court may deem just and proper.

Dated:  December 29, 2025

*s/ John C. Coyle*
JOHN C. COYLE

John C. Coyle (PA# 334759)
Francis P. McConville
Connor C. Boehme
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel.: (212) 907-0700
jcoyle@labaton.com
fmcconville@labaton.com
cboehme@labaton.com

Henry Rosen (*pro hac vice* forthcoming)
Brian O. O'Mara (*pro hac vice* forthcoming)
Steven M. Jodlowski (*pro hac vice* forthcoming)
**DiCELLO LEVITT LLP**
4747 Executive Drive, Suite 240
San Diego, CA 92121
Tel.: (619) 923-3939
hrosen@dicellolevitt.com
briano@dicellolevitt.com
stevej@dicellolevitt.com

15

Roxana Pierce (*pro hac vice* forthcoming)
**DiCELLO LEVITT LLP**
801 17th Street, NW, Suite 430
Washington, DC 20006
Tel.: (202) 975-2288
rpierce@dicellolevitt.com

*Proposed Co-Lead Counsel for Lead Plaintiffs and*
*the Proposed Class*

Thomas C. Michaud
Aaron L. Castle
**VANOVERBEKE MICHAUD**
**& TIMMONY P.C.**
79 Alfred Street
Detroit, MI 48201
Tel.: (313) 578-1200
tmichaud@vmtlaw.com
acastle@vmtlaw.com

*Additional Counsel for Macomb County*
*Employees' Retirement System*

16

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 29, 2025, I electronically filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ John C. Coyle*
JOHN C. COYLE

**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel.: (212) 907-0700
jcoyle@labaton.com
