# Exhibit I

# Exhibit I (1)

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| BUILDING TRADES PENSION FUND OF WESTER PENNSYLVANIA, Individually and on Behalf of All Others Similarly Situated, | Case No. 2:25-cv-06187 |
| Plaintiff, | **DECLARATION OF JOHAN VERBIST** |
| vs. |  |
| AVANTOR, INC. MICHAEL STUBBLEFIELD, and R. BRENT JONES, |  |
| Defendants. |  |

I, Johan Verbist, declare that the following is true and correct:

1.      I am a partner at Verbist & Vanlerberghe Omega Law in Antwerpen, Belgium.

2.      I have been asked by MercLan S.A. (MercLan - Very Defensive Portfolio, MercLan - Growth Portfolio, MercLan - Defensive Portfolio, MercLan - Balanced Portfolio), and MercLan Institutional Fund (MercLan - Institutional Equity Fund DBI-RDT) to provide an opinion regarding the legal status and structure of MercLan S.A. and MercLan Institutional Fund under Belgian law.

3.      I was admitted to the Brussels Bar in 1974, and in December 1988, was appointed by the King of Belgium as one of only twenty (20) attorneys admitted to the Bar of the Belgian Court of Cassation (Avocat à la Cour de cassation/Advocaat bij het Hof van Cassatie), also known as the Supreme Court, the highest Court in Belgium. Only attorneys admitted to the bar of the Belgian Court of Cassation are qualified to represent parties before the Belgian Court of Cassation in both civil and commercial cases. They are appointed by the King from a list of three candidates, drawn up by an advisory panel consisting of lawyers, magistrates of the Belgian Court of Cassation and university professors. Candidates must have been admitted to the Bar for at least ten years and must have successfully followed a four-year special education and training course organized by the Bar of the Supreme Court and passed an exam. I have been practicing Belgian law for over 50 years, focusing on commercial law and litigation, including Supreme Court litigation, and have significant experience practicing Belgian law on the topics of procedural and corporate law. I have written numerous publications on Belgian procedural and corporate law. A copy of my curriculum vitae is attached hereto as Exhibit A. As such, I am qualified to make such opinion.

4.      Under Belgian law, more specifically article 110 of the Belgian Code of International Private Law, legal persons are governed by the laws of the state in which their

1

registered office is located. Article 2:146 of the Belgian Companies and Associations Code ("BCAC") provides that the BCAC is applicable to legal persons which have their registered office in Belgium. MercLan Institutional Fund, with registered office in Belgium (Lange Lozanastraat 254, 2018 Antwerpen), and MercLan S.A., with registered office in Belgium (Desguinlei 50 2018 Antwerpen) are thus governed by Belgian law.

5.    In order to be a party to legal proceedings, a company must have legal personality (D. VAN GERVEN, "De rechtspersoonlijkheid. Kenmerken en soorten", in D. VAN GERVEN, Verenigingen, vennootschappen en stichtingen. Deel 1. Rechtspersoonlijkheid. Verenigingen, stichtingen & publiekrechtelijke rechtspersonen, Mechelen, Kluwer, 2022, 51, nr. 18; K. GEENS and M. WYCKAERT, Verenigingen en vennootschappen – Deel II. De Vennootschap. – A. Algemeen Deel, in reeks Beginselen van Belgisch Privaatrecht, Mechelen, Wolters Kluwer Belgium, 2011, 503, nr. 273).

6.    MercLan Institutional Fund is a Belgian public limited company, qualifying as an investment company with variable capital ("SICAV") organized as an undertaking for collective investment in transferable securities ("UCITS") subject to Belgian law, registered with the Belgian trade register ("Crossroads Bank for Enterprises" or "CBE") under number 0831.251.891.  As such, MercLan Institutional Fund has a legal personality and can be named as a plaintiff or a defendant in a legal action.

7.    MercLan Institutional Fund has one compartment or sub-fund.  Each compartment or sub-fund of a UCITS SICAV is subject to asset eligibility and diversification requirements as set out under the Law of 3 August 2012 on undertakings for collective investment that fulfil the conditions of Directive 2009/65/EC and undertakings for investment in receivables.  Where a UCITS SICAV comprises more than one compartment or sub-fund, each compartment or sub-fund

2

shall be regarded as a separate UCITS SICAV for the purpose of the applicable asset eligibility and diversification requirements.

8. MercLan S.A. is a Belgian public limited company, qualifying as an investment company with variable capital ("SICAV") organized as an undertaking for collective investment in transferable securities ("UCITS") subject to Belgian law, registered with the Belgian trade register ("Crossroads Bank for Enterprises" or "CBE") under number 0449.475.729.  As such, MercLan S.A. has a legal personality and can be named as a plaintiff or a defendant in a legal action.

9.      MercLan S.A. has multiple compartments or sub-funds.  Each compartment or sub-fund of a UCITS SICAV is subject to asset eligibility and diversification requirements as set out under the Law of 3 August 2012 on undertakings for collective investment that fulfil the conditions of Directive 2009/65/EC and undertakings for investment in receivables.  Where a UCITS SICAV comprises more than one compartment or sub-fund, each compartment or sub-fund shall be regarded as a separate UCITS SICAV for the purpose of the applicable asset eligibility and diversification requirements.

10.     The main feature of a UCITS SICAV is the segregation of assets between the compartments or sub-funds.  Assets of each compartment or sub-funds are indeed segregated by law so that the rights of investors and creditors concerning a compartment or sub-fund, or in connection with the creation, the operation, or the liquidation of that compartment or sub-fund, are limited to the assets of that compartment or sub-fund pursuant to the protected cell concept.

11.     Within a UCITS SICAV, each compartment or sub-fund is treated as a separate entity having its own name, funding, capital gains, losses, and expenses, although compartments or sub-funds do not have a legal personality distinct from the UCITS SICAV.

3

12.     Each compartment or sub-fund of a SICAV operates as an independent and distinct entity with respect to investors, assets, liabilities, and legal claims. Consequently, if a compartment or sub-fund incurs a loss on an investment, the corresponding legal claim belongs solely to that specific compartment or sub-fund. Each compartment's financial position remains independent of the results of other compartments – meaning that gains or losses in one compartment do not and, in fact, cannot offset gains or losses in another. This also means that the gains and/or losses of the compartments are not and cannot be consolidated at the SICAV level. The compartments are the beneficial owners of their own assets, but the compartments act legally through the SICAV, which, in this instance, are MercLan Institutional Fund and MercLan S.A.

13.     Compartments or sub-funds of a SICAV do not have legal personality. This means that while each compartment is treated as independent and separate in terms of investors, assets, liabilities, and legal claims, any legal action must be taken in the name of the SICAV itself for and on behalf of the specific compartment or sub-fund that is the beneficial owner of the legal claim.

14.     Due to their absence of legal personality, each compartment or sub-fund of a UCITS fund structured as a UCITS SICAV having the corporate form of a public limited company is represented towards third parties by the UCITS SICAV, itself acting in respect of a specific compartment or sub-fund and representing such compartment or sub-fund towards third parties. As such, MercLan Institutional Fund has the legal personality in this present action and acts on behalf of its compartment or sub-fund, MercLan - Institutional Equity Fund DBI-RDT, and MercLan S.A. has the legal personality in this present action and acts on behalf of its compartments or sub-funds, MercLan - Very Defensive Portfolio, MercLan - Growth Portfolio, MercLan - Defensive Portfolio and MercLan - Balanced Portfolio.

4

Pursuant to the laws of the United States of America (28 U.S.C. §1746), I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge. Executed this day in Antwerpen, Belgium.

VERBIST & VANLERGERGHE OMEGA LAW

Signed: _____

Johan Verbist, Partner

Date: _____

5

# Exhibit I (2)

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BUILDING TRADES PENSION FUND OF WESTER PENNSYLVANIA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>AVANTOR, INC. MICHAEL STUBBLEFIELD, and R. BRENT JONES,<br><br>Defendants. | Case No. 2:25-cv-06187<br><br>**DECLARATION OF JOHAN VERBIST** |

I, Johan Verbist, declare that the following is true and correct:

1.    I am a partner at Verbist & Vanlerberghe Omega Law in Antwerpen, Belgium.

2.    I have been asked by MercLan S.A. (MercLan - Very Defensive Portfolio, MercLan - Growth Portfolio, MercLan - Defensive Portfolio, MercLan - Balanced Portfolio) to provide an opinion regarding the legal status and structure of MercLan S.A. under Belgian law.

3.    I was admitted to the Brussels Bar in 1974, and in December 1988, was appointed by the King of Belgium as one of only twenty (20) attorneys admitted to the Bar of the Belgian Court of Cassation (Avocat à la Cour de cassation/Advocaat bij het Hof van Cassatie), also known as the Supreme Court, the highest Court in Belgium.  Only attorneys admitted to the bar of the Belgian Court of Cassation are qualified to represent parties before the Belgian Court of Cassation in both civil and commercial cases.  They are appointed by the King from a list of three candidates, drawn up by an advisory panel consisting of lawyers, magistrates of the Belgian Court of Cassation and university professors.  Candidates must have been admitted to the Bar for at least ten years and must have successfully followed a four-year special education and training course organized by the Bar of the Supreme Court and passed an exam.  I have been practicing Belgian law for over 50 years, focusing on commercial law and litigation, including Supreme Court litigation, and have significant experience practicing Belgian law on the topics of procedural and corporate law.  I have written numerous publications on Belgian procedural and corporate law.  A copy of my curriculum vitae is attached hereto as Exhibit A.  As such, I am qualified to make such opinion.

4.    Under Belgian law, more specifically article 110 of the Belgian Code of International Private Law, legal persons are governed by the laws of the state in which their registered office is located. Article 2:146 of the Belgian Companies and Associations Code ("BCAC") provides that the BCAC is applicable to legal persons which have their registered office

1

in Belgium. MercLan S.A., with registered office in Belgium (Desguinlei 50 2018 Antwerpen) is thus governed by Belgian law.

5.    In order to be a party to legal proceedings, a company must have legal personality (D. VAN GERVEN, "De rechtspersoonlijkheid. Kenmerken en soorten", in D. VAN GERVEN, Verenigingen, vennootschappen en stichtingen. Deel 1. Rechtspersoonlijkheid. Verenigingen, stichtingen & publiekrechtelijke rechtspersonen, Mechelen, Kluwer, 2022, 51, nr. 18; K. GEENS and M. WYCKAERT, Verenigingen en vennootschappen – Deel II. De Vennootschap. – A. Algemeen Deel, in reeks Beginselen van Belgisch Privaatrecht, Mechelen, Wolters Kluwer Belgium, 2011, 503, nr. 273).

6.    MercLan S.A. is a Belgian public limited company, qualifying as an investment company with variable capital ("SICAV") organized as an undertaking for collective investment in transferable securities ("UCITS") subject to Belgian law, registered with the Belgian trade register ("Crossroads Bank for Enterprises" or "CBE") under number 0449.475.729. As such, MercLan S.A. has a legal personality and can be named as a plaintiff or a defendant in a legal action.

7.    MercLan S.A. has multiple compartments or sub-funds. Each compartment or sub-fund of a UCITS SICAV is subject to asset eligibility and diversification requirements as set out under the Law of 3 August 2012 on undertakings for collective investment that fulfil the conditions of Directive 2009/65/EC and undertakings for investment in receivables. Where a UCITS SICAV comprises more than one compartment or sub-fund, each compartment or sub-fund shall be regarded as a separate UCITS SICAV for the purpose of the applicable asset eligibility and diversification requirements.

2

8.      The main feature of a UCITS SICAV is the segregation of assets between the compartments or sub-funds.  Assets of each compartment or sub-funds are indeed segregated by law so that the rights of investors and creditors concerning a compartment or sub-fund, or in connection with the creation, the operation, or the liquidation of that compartment or sub-fund, are limited to the assets of that compartment or sub-fund pursuant to the protected cell concept.

9.      Within a UCITS SICAV, each compartment or sub-fund is treated as a separate entity having its own name, funding, capital gains, losses, and expenses, although compartments or sub-funds do not have a legal personality distinct from the UCITS SICAV.

10.      Each compartment or sub-fund of a SICAV operates as an independent and distinct entity with respect to investors, assets, liabilities, and legal claims. Consequently, if a compartment or sub-fund incurs a loss on an investment, the corresponding legal claim belongs solely to that specific compartment or sub-fund. Each compartment's financial position remains independent of the results of other compartments – meaning that gains or losses in one compartment do not and, in fact, cannot offset gains or losses in another. This also means that the gains and/or losses of the compartments are not and cannot be consolidated at the SICAV level. The compartments are the beneficial owners of their own assets, but the compartments act legally through the SICAV, which, in this instance, is MercLan S.A.

11.      Compartments or sub-funds of a SICAV do not have legal personality. This means that while each compartment is treated as independent and separate in terms of investors, assets, liabilities, and legal claims, any legal action must be taken in the name of the SICAV itself for and on behalf of the specific compartment or sub-fund that is the beneficial owner of the legal claim.

12.      Due to their absence of legal personality, each compartment or sub-fund of a UCITS fund structured as a UCITS SICAV having the corporate form of a public limited company

3

is represented towards third parties by the UCITS SICAV, itself acting in respect of a specific compartment or sub-fund and representing such compartment or sub-fund towards third parties. As such, MercLan S.A. has the legal personality in this present action and acts on behalf of its compartments or sub-funds, MercLan - Very Defensive Portfolio, MercLan - Growth Portfolio, MercLan - Defensive Portfolio and MercLan - Balanced Portfolio.

Pursuant to the laws of the United States of America (28 U.S.C. §1746), I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge. Executed this day in Antwerpen, Belgium.

VERBIST & VANLERGERGHE OMEGA LAW

Signed: _____
Johan Verbist, Partner

Date: December 22, 2025

4

# Exhibit I-A

## RESUME JOHAN VERBIST

### *Personal Data*



| | |
|---|---|
| Last name: | VERBIST |
| First names: | Johan Frans Julia |
| Birthdate: | December 12, 1950 |
| Place birth: | Halle (Bt), Belgium |
| Citizenship: | Belgium |
| Private address: | Hooimanstraat 147 |
| | B-9112 Sinaai |
| | Belgium |
| Professional address: | Verbist & Vanlerberghe Omega Law |
| | Amerikalei 187 |
| | B – 2000 Antwerp |
| | Belgium |
| Telephone: | +32 3 2592921 |
| E-mail : | johan.verbist@omegalaw.be |

### *Education*

1969-1974 :   University of Louvain (Lic. Juris – magna cum laude -  KU Leuven 1974)
1975-1976:    LL.M. in International Legal Studies – (NYU 1976 ) with  CRB -BAEF fellowship
1976 :        Certificate of the Academy of American and International Law - Southwestern Legal Foundation – Texas 1976

### *Bar*

Admitted to the Brussels bar (1974)
Followed supreme court bar training course (1982-1987) and obtained certificate (1987)
Appointed to the Supreme Court bar of Belgium (1988) by Royal Decree
Served as head of the Supreme Court bar (2006-2008) and member of the bar council (2003-2014).
Teaches training courses supreme court bar and member of the exam committee

### *Professional career*

Joined the law firm DE BANDT, VAN GERVEN & LAGAE as an associate (1974)
Internship in the law firm CHADBOURNE, PARKE, WHITESIDE & WOLFF, 30 Rockefeller Plaza, New York (1976-1977)
Partner in the law firm DE BANDT, VAN HECKE & LAGAE (January 1, 1983)
Managing partner (1997-2000)
After the merger with LINKLATERS, partner at LINKLATERS (2003)
Headed for many years the Litigation Practice Group of LINKLATERS Belgium and the White-Collar Crime Team of LINKLATERS worldwide
Co-founder of the law firm  VERBIST & VANLERBERGHE OMEGA LAW (September 2013)

*Areas of specialization & rankings*

Combining Supreme Court work with general civil and commercial litigation and arbitration. Significant experience in arbitration, banking litigation, corporate and commercial litigation, construction disputes and white-collar crime cases.

Obtained continuously top rankings in all major international publications. Ranked in CHAMBERS GLOBAL 2013 as a Star Individual for Dispute Resolution.

*Publications*

Author, co-author or co-editor of numerous books and articles in legal periodicals on various topics, such as:

- **J. Verbist**, *Comparative Report on Force Majeure in Western Europe – Chapter on Belgium,* book edited by Matti Kurkela, The Union of Finnish Lawyers' Publishing Company, Finland (1982), 18-25;
- **J. Verbist**, Government Procurement Law and Procedure of Belgium*, George Washington Journal of International Law and Economics* (1987), Vol. 21, 5-25;
- J.M. Nelissen Grade & **J. Verbist**, *World Litigation Law & Practice ,Belgium,* Ronald E. Myrick – General Editor, Transnational Juris Publications, Inc., Dobbs Ferry New York (1989);
- **J. Verbist**, noot onder Cass. 11 juni 1982 in *Tijdschrift voor Belgisch Handelsrecht* (1983), 339, 343-347, on Rangregeling tussen voorrecht verhuurder en pandhoudende schuldeiser op handelszaak;
- **J. Verbist**, noot onder Cass. 25 mei 1984, in *Tijdschrift voor Belgisch Handelsrecht* (1984), 680, 682-683, on Rangregeling tussen voorrecht van de commissionair-expediteur en van de pandhoudende schuldeiser;
- **J. Verbist**, Einde van de symbiose tussen de leasingovereenkomst en de daardoor gefinancierde koopovereenkomst?, noot onder Brussel, 19 november 1986, *Tijdschrift voor Belgisch Handelsrecht* (1987), 504, 507-513;
- P. Van Ommeslaghe & **J. Verbist**, Overheidsaansprakelijkheid voor het optreden van de wetgevende macht, *Tijdschrift voor Bestuurswetenschappen en Publiekrecht* (2009), 3-24;
- **J. Verbist** & S. Loosveld, De rechtsbescherming voor de financiële toezichthouder (CBFA), *Le droit pénal financier en marche – Het financieel strafrecht in opmars, Cahiers AEDBF/EVBFR,* Belgium (2009), 341-376;
- **J. Verbist** & B. Vanlerberghe, Het beschikkingsbeginsel, het recht van verdediging, de onsplitsbaarheid: cassatiekwadratuur van de procedurecirkel, *Liber amicorum Ludovic De Gryse,* Larcier (2010), 431-444;
- **J. Verbist** & B. Vanlerberghe, De nieuwe Witwaspreventiewet : wordt de bedrijfsrevisor nu advocaat?, *Liber amicorum Hugo Van Geet,* VGD (2011), 575-588;
- **J. Verbist** & B. Vanlerberghe, Artikel 1080 van het Gerechtelijk Wetboek en de verplichte vermelding van de geschonden wettelijke bepalingen in het middel tot cassatie: een excessief formalisme?, *Liber spei et amicitiae Ivan Verougstraete,* Larcier (2011), 117-132;
- **J. Verbist** & B. Vanlerberghe, Het zwijgrecht van de advocaat, *Liber amicorum Jo Stevens*, Die Keure (2011), 651-666;
- **J. Verbist** & B. Vanlerberghe, Le droit de l'avocat de se taire en matière disciplinaire enfin reconnu par la Cour de cassation, *Revue de jurisprudence de Liège, Mons et Bruxelles,* (2012), 342-350 ;

- **J. Verbist** & S. Loosveld, De onderzoeksbevoegdheden van de financiële toezichthouders en de rechten van verdediging, *Financiële regulering in de kering, (14),* Instituut Financieel Recht (ed.), Intersentia (2012), 491-514;
- **J. Verbist** & S. Loosveld, Name and shame: Legal Limits to the Publication of Regulatory Decisions in the Financial Sector, *Droit bancaire et financier – Bank- en Financieel Recht,* (2012)/III-IV, 158-163;
- M. De Busschere, J. M. De Busschere, J. Meese , D. Van Der Kelen & **J. Verbist,** *Larcier Wet & Duiding Strafprocesrecht,* Edition 2010, 556 p.;
- M. De Busschere, J. Meese , D. Van Der Kelen & **J. Verbist,** *Larcier Wet & Duiding Strafrecht,* Edition 2012, 578 p.;
- M. De Busschere, J. M. De Busschere, J. Meese , D. Van Der Kelen & **J. Verbist,** *Larcier Wet & Duiding Strafprocesrecht,* Edition 2013, 730 p.;
- F. Lefèvre & **J. Verbist,** *The International Investigations Review,* Chapter on  Belgium, First Edition, 19-32;
- F. Lefèvre & **J. Verbist,** *The International Investigations Review,* Chapter on Belgium, Third Edition, 37-51;
- **J. Verbist,** Enkele remedies om de toevloed van cassatieberoepen in strafzaken in te dijken, *Amicus Curiae – Liber amicorum Marc De Swaef,* Intersentia (2013), 497-508;
- J. Stevens, I. Vandevelde & **J. Verbist,** *Artikelen & Commentaar Balie – Commentaar Boek III Ger. W.,* Kluwer (2013), 689 p.;
- **J. Verbist,** Op til zijnde hervormingen van de cassatieprocedure in strafzaken, *Cassatie in strafzaken,* W. Van Eeckhoutte & J. Ghijssels (eds.), Intersentia (2014), 277-294;
- **J. Verbist** & Ph. Traest, Cassatiemiddelen in Strafzaken, *Cassatie in strafzaken,* W. Van Eeckhoutte & J. Ghijssels (eds.), Intersentia (2014), 69-121;
- **J. Verbist,** De hervorming van de cassatieprocedure in strafzaken, *Rechtskundig* Weekblad (2013-14), 1604-1614;
- **J. Verbist,** Belgium: the possibility to settle cases under Belgian criminal law, *EXPERT GUIDES White Collar Crime,* Euromoney Trading Limited (2014), 8-10;
- **J. Verbist,** J. Van Caeyzeele & S. Vercauteren, Belgium Law & Practice, *CHAMBERS Legal Practice Guides – Litigation,* Edited by Evan R. Chesler,  Chambers & Partners, (2014), 98-116;
- M. De Busschere, J. Meese , D. Van Der Kelen & **J. Verbist,** *Larcier Wet & Duiding Strafrecht,* Edition 2015, 802 p.;
- **J. Verbist** & B. Vanlerberghe, Ontvankelijkheid van het cassatieberoep in burgerlijke zaken, *Procederen voor het Hof van Cassatie – Procéder devant la Cour de cassation* (2016), 328-385;
- M. De Busschere, J. M. De Busschere, J. Meese , D. Van Der Kelen & **J. Verbist,** *Larcier Wet & Duiding Strafprocesrecht,* Edition 2017, 979 p.;
- M. De Busschere, J. Meese , D. Van Der Kelen & **J. Verbist,** *Larcier Wet & Duiding Strafrecht,* Edition 2018, 904 p.;
- **J. Verbist**, De notaris, medewerker van het gerecht en het Hof van Cassatie: één jaar cassatierechtspraak, *Liber Amicorum Aloïs Van den Bossche,* Die Keure (2019), 411-427;
- **J. Verbist**, Carve-out clausules in Share Purchase Agreements: hun burgerrechtelijke, processuele en mogelijke strafrechtelijke implicaties, *Liber amicorum Jean-Pierre Blumberg* Intersentia (2021), 639-648;
- B. Vanlerberghe & **J. Verbist,** Babylonische spraakverwarringen in het gerechtelijk recht. Pleidooi voor een definiëring van de begrippen eindvonnis, eindbeslissing, beslissing alvorens recht te doen, maatregel van inwendige aard, *Redelijk eigenzinnig… Liber amicorum Eric Brewaeys, Philippe Colle, Erna Guldix, Bruno Maes*, Knops Publishing (2023), 949-965;
- **J. Verbist,** co-author *Rol, statuut en deontologie van de bemiddelaar*, Die Keure (2023).

*Lectures*

Have given numerous lectures on various topics, such as e.g.:

− Bankguarantees on first demand, December 7, 1981, Studiecentrum voor het Financiewezen, Leuven;
− Juridische Aspecten m.b.t. de computer, June 14, 1982, R.U. Gent – Vlerick School of Management;
− Title retention clauses – Bankguarantrees in International Trade, September 28, 1983 and November 20, 1984, Legal Aspects of Export, Instituut voor Postuniversitair Onderwijs, Antwerpen;
− Conflict of Laws with respect to new Types of Sureties in International Transactions, June 26, 1984, New Currents in a Changing World – U.S. and E.E.C. Law and International Disputes, organized by the New York University, Brussels;
− Bescherming tegen Oneerlijke Handelspraktijken in verband met Softwareproducten, June 20, 1983, May 28, 1984, June 10, 1985, June 9, 1986 and April 20, 1988, Computer Management, R.U. Gent – Vlerick School of Management;
− The Cassation procedure, lectures given each year 2002-2014 at the University of Leuven – Law faculty;
− Lecturing on Admissibility of the cassation appeal in civil matters and on Cassation grounds in penal matter, Training courses organized by the Supreme Court Bar of Belgium.