## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BUILDING TRADES PENSION FUND OF WESTERN PENNSYLVANIA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> AVANTOR, INC., MICHAEL STUBBLEFIELD, and R. BRENT JONES, <br><br> Defendants. | Case No. 2:25-cv-06187-GAM <br><br> Hon. Gerald A. McHugh <br> District Judge <br><br> <u>CLASS ACTION</u> <br><br> **ORAL ARGUMENT REQUESTED** |
| CITY OF PONTIAC REESTABLISHED GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> AVANTOR, INC., MICHAEL STUBBLEFIELD, R. BRENT JONES, JONATHAN PEACOCK, and STEVEN ECK, <br><br> Defendants. | Case No. 2:25-cv-06686-GAM <br><br> Hon. Gerald A. McHugh <br> District Judge <br><br> <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF THE PENSION FUNDS FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF <u>COUNSEL, AND IN OPPOSITION TO THE COMPETING MOTIONS</u>**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT.........................................................................................................3

        A.      Legal Standards at the Lead Plaintiff Stage................................................3

        B.      The Pension Funds Have the Largest Financial Interest...........................3

        C.      The MercLan/Kempen and KBC Groups Are Atypical and Subject to
                Unique Defenses ........................................................................................8

        D.      The Pension Funds Should Be Appointed Lead Plaintiff.....................10

III.    CONCLUSION...................................................................................................12

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akhras v. SSR Mining, Inc.*,
   No. 24-cv-739, 2024 WL 3647704 (D. Colo. Aug. 2, 2024).......................................................... 8

*Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*,
   No. 20-cv-200, 2020 WL 815136 (E.D. Pa. Feb. 19, 2020).................................................... 6, 11

*Born v. Quad/Graphics, Inc.*,
   No. 19-cv-10376, 2020 WL 994427 (S.D.N.Y. Mar. 2, 2020)...................................................... 9

*City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*,
   No. 23-cv-1769, 2023 WL 6458930 (S.D.N.Y. Oct. 4, 2023)...................................................... 8

*Deering v. Galena Biopharma, Inc.*,
   No. 14-cv-367, 2014 WL 4954398 (D. Or. Oct. 3, 2014) ....................................................... 2, 9

*Doshi v. Gen. Cable*,
   No. 17-cv-25, 2017 WL 5178673 (E.D. Ky. Nov. 7, 2017) .................................................. 8, 10

*Gordon v. Sonar Capital Mgmt. LLC*,
   92 F. Supp. 3d 193 (S.D.N.Y. 2015)..................................................................................... 9, 10

*Himes v. Five Below, Inc.*,
   No. 24-cv-3638, 2024 WL 4596235 (E.D. Pa. Oct. 28, 2024) ................................................ 11

*In re Bausch & Lomb Inc. Sec. Litig.*,
   244 F.R.D. 169 (W.D.N.Y. 2007)............................................................................................. 6

*In re Cable & Wireless, PLC, Sec. Litig.*,
   217 F.R.D. 372 (E.D. Va. 2003) .......................................................................................... 7, 8

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) .................................................................................................. 3

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)........................................................................................... 3, 4, 10

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
   No. 03-cv-2166, 2004 WL 3314943 (N.D. Ohio May 12, 2004) ......................................... 2, 7

*In re Molson Coors Brewing Co. Sec. Litig.*,
   No. 19-cv-455, 2019 WL 10301639 (D. Colo. Oct. 3, 2019)................................................... 7

*In re Paysafe Ltd. Sec. Litig.*,
No. 21-cv-10611, 2024 WL 1636415 (S.D.N.Y. Apr. 16, 2024) ................................................ 8

*Jaffe Pension Plan v. Household Int'l, Inc.*,
756 F. Supp. 2d 928 (N.D. Ill. 2010) ..................................................................................... 9

*Jakobsen v. Aphria, Inc.*,
No. 18-cv-11376, 2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) ............................................ 10

*Johnson v. Dana Corp.*,
236 F.R.D. 349 (N.D. Ohio 2006) ..................................................................................... 4, 6

*Lax v. First Merchs. Acceptance Corp.*,
No. 97-cv-2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) .................................................... 4

*Marcus v. J.C. Penney Co.*,
No. 13-cv-736, 2014 WL 11394911 (E.D. Tex. Feb. 28, 2014) .............................................. 10

*Perlmutter v. Intuitive Surgical, Inc.*,
No. 10-cv-3451, 2011 WL 566814 (N.D. Cal. Feb. 15, 2011) .................................... 4, 5, 6, 10

*Plymouth County Retirement System v. Apache Corp.*,
566 F. Supp. 3d 712 (S.D. Tex. 2021) ................................................................................. 9, 10

*Richman v. Goldman Sachs Grp., Inc.*,
274 F.R.D. 473 (S.D.N.Y. 2011) ......................................................................................... 9

*Ross v. Abercrombie & Fitch Co.*,
No. 05-cv-819, 2007 WL 895073 (S.D. Ohio Mar. 22, 2007) ................................................ 10

*Scheller v. Nutanix, Inc.*,
19-cv-1651, 2021 WL 2410832 (N.D. Cal. June 10, 2021) .................................................... 10

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ............................................................................................... 1

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................ 1, 2, 3

**Other Authorities**

7 William B. Rubenstein, Newberg & Rubenstein on Class Actions § 22:42 (6th ed., Dec. 2025
update) .............................................................................................................................. 4

iii

The Pension Funds respectfully submit this Memorandum of Law in further support of their Motion for appointment as Lead Plaintiff (ECF No. 7), and in opposition to the competing motions.[1]

I.    INTRODUCTION

The PSLRA provides that the "court shall adopt a presumption that the most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Of the three movants,[2] only the Pension Funds satisfy both requirements and are entitled to appointment as Lead Plaintiff under the PSLRA.

*First*, neither the MercLan/Kempen Group nor the KBC Group has the largest financial interest in this litigation because they sold more shares of Avantor stock than they purchased during the Class Period (*i.e.*, they are "net sellers") and generated significant profits from these transactions at fraud-inflated prices (*i.e.*, they are "net gainers"). As reflected in the chart below, the MercLan/Kempen Group and the KBC Group respectively sold 2,390,173 and 886,968 more Avantor shares than they purchased and respectively generated $1.5 million and $12.4 million more in proceeds than they expended on Avantor stock:

---

[1] All defined terms take their meanings from the Pension Funds' opening brief, ECF No. 7-1. Internal quotations and citations are omitted, and all emphasis is added unless otherwise noted.

[2] The competing movants are: (1) MercLan S.A. (MercLan - Very Defensive Portfolio, MercLan - Growth Portfolio, MercLan - Defensive Portfolio, MercLan - Balanced Portfolio), MercLan Institutional Fund (MercLan - Institutional Equity Fund DBI-RDT), Kempen International Funds (Kempen International Funds - MercLan Global Equity, Kempen International Funds – MercLan Patrimonium) (collectively, "MercLan/Kempen Funds"), and Macomb County Employees' Retirement System ("Macomb County," and with the MercLan/Kempen Funds, the "MercLan/Kempen Group") (ECF No. 8); and (2) KBC Asset Management NV ("KBC") and Michigan Carpenters' Pension Fund ("Michigan Carpenters," and with KBC, "the KBC Group") (ECF No. 12). On January 12, 2026, the KBC Group, which, as addressed herein, is subject to identical deficiencies as the MercLan/Kempen Group, filed a notice of non-opposition to the motion of the MercLan/Kempen Group. *See* ECF No. 20.

1

| Movant | Total Shares Purchased | Net Shares Purchased/ (Sold) | Net Funds Received/(Expended) | Claimed LIFO Loss |
|---|---|---|---|---|
| ~~MercLan/Kempen Group~~ | ~~3,348,071~~ | ~~(2,390,173)~~ | ~~$1,524,619~~ | ~~$28,778,300~~ |
| ~~KBC Group~~ | ~~1,737,875~~ | ~~(886,968)~~ | ~~$12,464,219~~ | ~~$9,036,494~~ |
| **Pension Funds** | **88,137** | **44,164** | **($1,270,617)** | **$823,181** |

Courts consistently reject movants like the MercLan/Kempen and KBC Groups that are both net sellers and net gainers—even if they claim a sizable loss—because they "cannot establish the largest financial interest in the relief sought by the class." *In re Goodyear Tire & Rubber Co. Sec. Litig.*, No. 03-cv-2166, 2004 WL 3314943, at *4 (N.D. Ohio May 12, 2004) (disqualifying group of "Institutional Funds" that "sold . . . more [] shares during the Class Period than they purchased, and received more profits from the sale of [] stock during the Class Period than losses").

*Second*, even if the MercLan/Kempen and KBC Groups possessed larger financial interests than the Pension Funds (they do not), both groups must be disqualified because, as net sellers and net gainers, they suffer from unique defenses that render them both atypical and inadequate. Indeed, "courts around the country *consistently* have rejected applications for lead plaintiff made by net sellers and net gainers," regardless of their claimed loss, because these movants have "the difficulty of proving damages at trial." *Deering v. Galena Biopharma, Inc.*, No. 14-cv-367, 2014 WL 4954398, at *11 (D. Or. Oct. 3, 2014) (rejecting group, reasoning that their net seller and net gainer status renders them "totally out of the running for designation as lead plaintiff" given exposure to unique defenses) (collecting cases). As such, the MercLan/Kempen Group's and KBC Group's inability to meet Rule 23's requirements is fatal and is an independent basis to reject their motions under the PSLRA. *See id.*

Given the MercLan/Kempen Group's and KBC Group's deficiencies, the Pension Funds possess the largest financial interest, with a $823,181 LIFO loss, 44,164 net shares purchased,

2

more than $1.2 million in net expenditures, and 88,137 total shares purchased.  *See* Pension Funds'

loss charts, ECF 7-4 (providing basis for calculations).  Indeed, the Pension Funds are the ***only***

***movant*** that did not profit from the fraud during the Class Period, having purchased more shares

than they sold (44,164 shares) and spent more money on those purchases than they received from

sales (more than $1.2 million).  Furthermore, the Pension Funds have established that they are the

prototypical lead plaintiff envisioned by Congress when enacting the PSLRA and meet all criteria

for appointment, and their candidacy is beyond reproach.  Accordingly, the Court should grant the

Pension Funds' motion and deny the competing motions.

## II.    ARGUMENT

### A.    Legal Standards at the Lead Plaintiff Stage

The "threshold determination" under the PSLRA is to identify whether the movant with

the largest financial interest ***also*** satisfies Rule 23's typicality and adequacy requirements.  *In re*

*Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001).  "The court must examine potential lead

plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing

in descending order" when the presumptive lead plaintiff is found inadequate or atypical.  *In re*

*Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002).  If the movant with the greatest financial stake

does not satisfy Rule 23, "the court must begin the process anew (*i.e.*, identifying which of the

remaining movants has the highest financial interest in the class's recovery, assessing whether that

movant satisfies the threshold typicality and adequacy requirements, and determining whether the

presumption has been rebutted) until a lead plaintiff is selected."  *Cendant*, 264 F.3d at 268.

### B.    The Pension Funds Have the Largest Financial Interest

In assessing financial interest, courts generally consider four financial interest metrics (the

"*Lax* Factors"), including: "(1) the number of shares purchased; (2) the number of net shares

purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." *Lax v. First Merchs. Acceptance Corp.*, No. 97-cv-2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997); *see also Cendant*, 264 F.3d at 262 (approving of *Lax* Factors); 7 William B. Rubenstein, Newberg & Rubenstein on Class Actions § 22:42 (6th ed., Dec. 2025 update) (observing that "most courts" apply the *Lax* test).[3]

Critically, for two reasons, courts discount the asserted financial interests of movants who are both net sellers and net gainers. *See, e.g.*, *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-cv-3451, 2011 WL 566814, at *8 (N.D. Cal. Feb. 15, 2011) (finding a movant's status as a net seller and net gainer "weighs against his financial interest in the litigation") (collecting cases). First, a net seller (like the MercLan/Kempen and KBC Groups) "arguably profits more from the fraud than suffers from it"—unlike a net purchaser (like the Pension Funds), who "ha[s] a greater interest in a securities lawsuit because a net purchaser was induced by the fraud to purchase shares and has been left 'holding the bag' when the fraud is eventually revealed." *Id.* Second, a net gainer (like the MercLan/Kempen and KBC Groups) "is a party who profited from the purchase and sale of a defendant's stock during the class period." *Id.*

As shown in Exhibit 1 to the Declaration of Naumon A. Amjed in Further Support of the Pension Funds' Motion ("Amjed Supp. Decl.") (annotated version of MercLan/Kempen Group's loss chart), and summarized in the chart below, the MercLan/Kempen Group sold 2,390,173 more

---

[3] With regard to the fourth *Lax* Factor, approximate losses, courts prefer to assess losses using the LIFO loss calculation method rather than first-in, first-out ("FIFO") loss calculation method. *See, e.g.*, *Johnson v. Dana Corp.*, 236 F.R.D. 349, 352-53 (N.D. Ohio 2006) (explaining differences between LIFO and FIFO and employing LIFO because FIFO allows plaintiffs with significant pre-existing holdings of defendants' securities to profit substantially from defendant's misconduct and then turn around and show a loss for purposes of litigation). The KBC Group provided two loss analyses with their motion papers: the first (*see* ECF 12-5 at 2-3), which reports a larger loss, uses the FIFO method; and the second (*see* ECF 12-5 at 4-5) uses the LIFO method.

shares than it purchased, and received $1.5 million more in proceeds from sales of Avantor stock than it expended.  *See* MercLan/Kempen Group's loss chart, ECF No. 8-5.[4]

**Summary of MercLan/Kempen Group's Class-Period Transactions**

| Total Shares Purchased | Total Shares Sold | Net Shares Sold ("Net Seller") |
|---|---|---|
| 3,348,071 | (5,738,244) | (2,390,173) |

| Cost of Shares Purchased | Proceeds from Shares Sold | Net Gains from Shares Sold ("Net Gainer") |
|---|---|---|
| ($71,131,545) | $72,656,164 | $1,524,619 |

Similarly, as shown in Amjed Supp. Decl., Ex. 2 (annotated version of KBC Group's certifications), the KBC Group sold 886,968 more shares than it purchased, and received $12.4 million more in proceeds from sales than it expended.  *See* KBC Group's certifications, ECF No. 12-4.[5]

---

[4] The MercLan/Kempen Funds' loss analysis includes information that is not relevant to the Court's analysis of their financial interest: the cost-basis for shares purchased **before** the Class Period begins on March 5, 2024.  *See id.* at 2-8.  The irrelevancy of this information is evident from the fact that none of the other movants—including the MercLan/Kempen Funds' co-movant, Macomb County—provided information about the cost of their purchases before the Class Period (a time period in which no complaint or movant has alleged the Company's stock price was artificially inflated by the alleged fraud).  *Compare* MercLan/Kempen Funds' loss analysis, ECF 8-5 at 2-8, *with* Macomb County's loss analysis, *id.* at 9.  To the extent that the MercLan/Kempen Group argues that their financial interest is bolstered by the prices the MercLan/Kempen Funds paid for **pre**-Class Period purchases, the argument necessarily fails.  All that is relevant to the *Lax* analysis is the cost and proceeds for shares purchased and sold **during** the Class Period, when Avantor stock was artificially inflated.  *See Perlmutter*, 2011 WL 566814, at *9 (explaining that net expenditures "is calculated by looking at the total cash outlays on [the company's] stock **during the Class Period** and subtracting any cash receipts during the same period"); *see also* Amjed Supp. Decl. Ex. 1 at 1-4 (striking irrelevant information about pre-Class Period purchases).

[5] The KBC Group's loss analyses obscure its status as a net seller and net gainer by omitting significant Class Period sales matched to pre-Class Period purchases.  *See id.* ECF No. 12-5.  Specifically, the KBC Group failed to include in its loss chart **23 sales by KBC** (in whole or in part) from its LIFO loss chart that match to pre-Class Period purchases—sales that generated nearly **$22.2 million in proceeds for KBC during the Class Period**.  *See* Amjed Supp. Decl., Ex. 2

5

**Summary of KBC Group's Class-Period Transactions**

| Total Shares Purchased | Total Shares Sold | Net Shares Sold ("Net Seller") |
|:---:|:---:|:---:|
| 1,737,875 | (2,624,843) | (886,968) |

| Cost of Shares Purchased | Proceeds from Shares Sold | Net Gains from Shares Sold ("Net Gainer") |
|:---:|:---:|:---:|
| ($30,742,368) | $43,206,588 | $12,464,220 |

Analyzing movants' net sales and net gains enables courts to assess whether a movant's financial interest is undermined by the fact that they "benefitted from the artificially inflated prices complained of in [the] lawsuit." *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 173 (W.D.N.Y. 2007); *see also Perlmutter*, 2011 WL 566814, at *9 (explaining that "[t]he purpose of isolating the calculation of net sales and net gains . . . is to determine whether a party potentially benefitted from the fraud" by selling shares acquired "at fair market value" prior to the class period at "fraudulently inflated prices"). Here, because the MercLan/Kempen and KBC Groups benefitted from Defendants' fraud by selling 2,390,173 and 886,968 more shares, respectively, at

---

(annotated version of the KBC Group's certifications). Moreover, the application of FIFO (*see* KBC Group's loss chart, ECF No. 12-5 at 2-3)—widely rejected by courts for inflating losses—does not mandate a different calculation regarding net shares and net expenditures. *See Dana Corp.*, 236 F.R.D. at 352 ("[U]nder FIFO, many plaintiffs will show damages from defendant's alleged misconduct when those plaintiffs actually profited from the misconduct."); *Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, No. 20-cv-200, 2020 WL 815136, at *3 n.1 (E.D. Pa. Feb. 19, 2020) (citing *Dana Corp.* and explaining that "courts have expressed preference for LIFO, as it takes into account gains that might have accrued to plaintiffs during the class period due to the inflation of the stock price"); *see also Perlmutter*, 2011 WL 566814, at *9-10 (demonstrating that the net seller and net gainer determination is distinct from the matching of purchases and sales for loss calculation purposes).

6

artificially inflated prices than they bought, translating to more than **$1.5 million and $12.4 million** in net profits, respectively, they are each a "net seller" **and** a "net gainer."[6]

The court's analysis in *Goodyear* is instructive.  There, the court rejected a group of two pension funds, finding that, although they claimed significant losses, that factor alone "grossly inflates [their] damages because [they] are a 'net seller' of Goodyear stock."  2004 WL 3314943, at *4.  Specifically, the court explained that the group "sold 202,714 more Goodyear shares during the Class Period than they purchased, and received more profits from the sale of Goodyear stock during the Class Period than losses on the purchase of Goodyear securities."  *Id.*  The court reasoned that the group "may have benefited from the alleged fraud in view of the fact that"—like the MercLan/Kempen and KBC Groups here—"they earned millions of dollars on net sales . . . during the Class Period."  *Id.*  Accordingly, the court found that the group "cannot establish the largest financial interest in the relief sought by the class."  *Id*.

Similarly, in *In re Cable & Wireless, PLC, Securities Litigation*, the court rejected a group of two pension funds, finding that the group's status as a net seller in the aggregate was enough to disqualify them.  217 F.R.D. 372, 378 (E.D. Va. 2003).  The Court explained, "[t]he fact that [the group] sold more shares than it purchased during the class period undermines [its] contention that it has the largest financial interest. . . ."  *Id.*  (reasoning that, as a net seller, the group was "totally out of the running for designation as lead plaintiff").  The Court also disqualified the group because one member "received more in proceeds from selling its  . . . shares than it paid to purchase shares

---

[6] As net gainers, the MercLan/Kempen and KBC Groups cannot rely on precedent appointing net sellers who, despite selling more stock than they purchased during the Class Period, spent more on their purchases than they received from stock sales (*i.e.*, "**net losers**" as opposed to net gainers). *See*, *e.g.*, *In re Molson Coors Brewing Co. Sec. Litig.*, No. 19-cv-455, 2019 WL 10301639, at *3 (D. Colo. Oct. 3, 2019) (appointing net seller that was a net loser, as distinct from a net gainer).

during the class period." *Id.* (disqualifying group because one member "received more in profits from selling . . . shares than losses on the purchase of . . . securities").

Accordingly, as net sellers and net gainers, the MercLan/Kempen Group and the KBC Group lack larger financial interests than the Pension Funds. *Id.*

**C.    The MercLan/Kempen and KBC Groups Are Atypical and Subject to Unique Defenses**

At the lead plaintiff stage, a competing movant "need not establish [another movant]'s inadequacy with absolute certainty; instead it is enough that it presents a colorable risk of inadequacy." *In re Paysafe Ltd. Sec. Litig.*, No. 21-cv-10611, 2024 WL 1636415, at *6 (S.D.N.Y. Apr. 16, 2024). Thus, where "there is at least a ***potential*** that a plaintiff will be subject to unique defenses, disqualification is appropriate." *Id*.

Regardless of whether either the MercLan/Kempen Group or the KBC Group has the largest financial interest, courts "regularly" reject net sellers and net gainers as they "may be subject to unique defenses [from] . . . selling pre-Class Period shares at allegedly inflated prices during the Class Period." *Doshi v. Gen. Cable*, No. 17-cv-25, 2017 WL 5178673, at *3 (E.D. Ky. Nov. 7, 2017) (rejecting institutional investor as "exactly the type of net gainer held by the above authorities to be an inadequate lead plaintiff"); *see also Akhras v. SSR Mining, Inc.*, No. 24-cv-739, 2024 WL 3647704, at *9 (D. Colo. Aug. 2, 2024) ("Most courts find that a plaintiff who is both a net seller and net gainer is subject to a unique defense, or is otherwise atypical and inadequate, because it may have (unwittingly) benefited from the fraud, or it may not be as motivated to vigorously litigate and establish full damages for the class."); *City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*, No. 23-cv-1769, 2023 WL 6458930, at *5 (S.D.N.Y. Oct. 4, 2023) (rejecting institutional investor that "arguably has the largest financial interest in the litigation" because its "status as a net purchaser and net gainer undermine[s] [its]

ability to serve as lead plaintiff"); *Galena*, 2014 WL 4954398, at *11 ("courts around the country consistently have rejected applications for lead plaintiff made by net sellers and net gainers, recognizing the difficulty of proving damages at trial"); *Born v. Quad/Graphics, Inc.*, No. 19-cv-10376, 2020 WL 994427, at *2 (S.D.N.Y. Mar. 2, 2020) (rejecting net gainer due to "exceeding[] concern[s]"); *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 479 (S.D.N.Y. 2011) ("there is wisdom in the rule that net sellers who are also net gainers should not be lead plaintiffs").

Here, notwithstanding the inferiority of the MercLan/Kempen Group's and KBC Group's respective financial interests, their claimed losses are ultimately irrelevant because their status as net sellers and net gainers disqualifies them both under Rule 23.  The court's analysis in *Plymouth County Retirement System v. Apache Corp.*, 566 F. Supp. 3d 712 (S.D. Tex. 2021), is illustrative. There, the court concluded that the movant with the largest LIFO loss nevertheless should be disqualified because he was "subject to unique defenses as a 'net seller' and 'net gainer.'" *Id.* at 718.  Specifically, "[b]ecause 'net sellers' and 'net gainers' may have benefitted by selling shares purchased before the class period at allegedly inflated prices during the class period, they may have difficulty proving damages at trial and are subject to unique defenses that do not befall other class members." *Id.*[7]  Critically, the court rejected arguments that the movant was "not a net gainer because he suffered losses under a LIFO analysis of his transactions during the class period"— concluding that the "argument goes nowhere" because "LIFO losses are completely irrelevant to

---

[7] For example, at the class certification stage, Defendants would doubtlessly argue that the MercLan/Kempen Group or the KBC Group cannot claim damages when their fraud-related profits and losses are "netted" against each other.  *See*, *e.g.*, *Jaffe Pension Plan v. Household Int'l, Inc.*, 756 F. Supp. 2d 928, 935 (N.D. Ill. 2010) ("plaintiffs' losses [must] be netted against their profits attributable to the same fraud").  The need for both groups to address the netting issue, which is critical to them—yet irrelevant to other class members—is disqualifying.  *See Gordon v. Sonar Capital Mgmt. LLC*, 92 F. Supp. 3d 193, 205 (S.D.N.Y. 2015) (rejecting net gainer as a class representative because the netting issue would be paramount for him, unlike other class members).

the net gainer analysis." *Id.* at 719.  Echoing the analysis in *Perlmutter*, the court further explained that "[t]he purpose of isolating the calculation of net sales and net gains to the Class Period is to determine whether a party potentially benefitted from the fraud," which "is not the same as determining whether a party lost or earned money trading in a particular stock." *Id.* (quoting *Perlmutter*, 2011 WL 566814, at *9); *see also Scheller v. Nutanix, Inc.*, 19-cv-1651, 2021 WL 2410832, at *7 (N.D. Cal. June 10, 2021) (rejecting movant as improper "net gainer" despite fact he "suffered sizeable losses").  *Doshi* accords with the analysis in *Apache*.  Like *Apache*, the court in *Doshi* rejected a "net seller" and "net gainer" who claimed the largest loss because the movant was subject to unique defenses.  *See* 2017 WL 5178673, at *3.

Accordingly, the MercLan/Kempen Group and KBC Group's status as "net sellers" and "net gainers" is fatal to their motion.  No amount of loss could remedy this infirmity because neither the MercLan/Kempen Group nor KBC Group are able to satisfy the requirements of Rule 23.  Both movants must be disqualified.[8]

### D.    The Pension Funds Should Be Appointed Lead Plaintiff

Because the MercLan/Kempen Group and KBC Group do not possess the greatest financial interest and also cannot satisfy Rule 23's requirements, the Pension Funds are the only movant that meets all prerequisites for appointment.  *Cendant*, 264 F.3d at 267.

---

[8] The Court should reject any proposal by individual members of the MercLan/Kempen Group or the KBC Group to be considered as stand-alone movants, as they filed only group motions and cannot now be disbanded.  *See*, *e.g.*, *Jakobsen v. Aphria, Inc.*, No. 18-cv-11376, 2019 WL 1522598, at *4 n.3 (S.D.N.Y. Mar. 27, 2019) (explaining that because "[t]here are no separate motions to appoint any member of the [movant] Group as lead plaintiff on an individual basis[,] . . . this Court does not consider whether each individual member of the [movant] Group could be appointed as lead plaintiff."); *Marcus v. J.C. Penney Co.*, No. 13-cv-736, 2014 WL 11394911, at *6 (E.D. Tex. Feb. 28, 2014) (finding group member's "consideration for appointment as lead plaintiff rises and falls with the group"); *Ross v. Abercrombie & Fitch Co.*, No. 05-cv-819, 2007 WL 895073, at *4 (S.D. Ohio Mar. 22, 2007) ("There is no requirement in the [PSLRA] that the Court realign a proposed group to cure a deficiency in adequacy of representation.").

As set forth in their loss charts (ECF No. 7-4), the Pension Funds have a strong incentive to vigorously prosecute this action, having together suffered a substantial loss of $823,181 on their purchases of Avantor stock during the Class Period.  They are a net purchaser of 44,164 shares of Avantor stock, having held throughout the Class Period more than 50% of the shares they purchased, and a "net loser," having expended $1,270,617 more on a net basis than they received from any sales of stock during the Class Period.  *Id.* at 4.

The Pension Funds also have demonstrated that they are a cohesive group of sophisticated institutional investors with significant resources that will fairly and adequately represent the class. For example, they have pledged to efficiently oversee the prosecution of this action, detailing, among other things, the origins of the Pension Funds' collaboration, their ongoing coordination and communication procedures, their prior experience overseeing PSLRA class actions, and their commitment to vigorously prosecuting this action through counsel.  *See* ECF No. 7-5 ¶¶ 7-15, 17-18; *see also Himes v. Five Below, Inc.*, No. 24-cv-3638, 2024 WL 4596235, at *4-5 (E.D. Pa. Oct. 28, 2024) (McHugh, J.) (finding group satisfied the adequacy requirement where it submitted a similar joint declaration); *Energy Transfer*, 2020 WL 815136, at *5 (same).  They have also retained experienced counsel to vigorously prosecute this action on behalf of the class, entered a Joint Prosecution Agreement governing counsel's activities, and instructed their proposed Lead Counsel to keep contemporaneous time records.  ECF No. 7-5 ¶ 17; *see also Energy Transfer*, 2020 WL 815136, at *5 (highlighting movant group's oversight procedures, including entering a joint prosecution agreement).[9]

---

[9] The Pension Funds' efforts in advancing this litigation to date underscore their adequacy to serve as Lead Plaintiff.  Building Trades, through the Pension Funds' proposed Lead Counsel, investigated and initiated this litigation, filing the first action. *See* ECF No. 7-1 at 7; 7-5 ¶ 10.

11

Accordingly, and because no "proof" exists to rebut the presumption that the Pension Funds are the most adequate plaintiff, the Court should deny the competing motions.

## III.    CONCLUSION

For the reasons set forth above, the Pension Funds respectfully submit that their Motion should be granted, and the competing motions of the MercLan/Kempen Group and the KBC Group should be denied.

Dated: January 12, 2026

Respectfully submitted,

*s/ Naumon A. Amjed*
Naumon A. Amjed (PA #309520)
**KESSLER TOPAZ MELTZER**
  **& CHECK, LLP**
Darren J. Check (PA #86279)
Ryan T. Degnan (PA #309305)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com

**SAXENA WHITE P.A.**
Maya Saxena (*pro hac vice* forthcoming)
Lester R. Hooker (*pro hac vice* forthcoming)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
lhooker@saxenawhite.com

-and-

Marco A. Dueñas (*pro hac vice* forthcoming)
10 Bank Street, Suite 882
White Plains, NY 10606
Telephone: (914) 437-8551
Facsimile: (888) 631-3611
mduenas@saxenawhite.com

12

*Counsel for Proposed Lead Plaintiff the Pension Funds and Proposed Lead Counsel for the Class*

13

**CERTIFICATE OF SERVICE**

I, Naumon A. Amjed, hereby certify that on January 12, 2026, I caused a true and correct copy of the foregoing Memorandum of Law in Further Support of the Motion of the Pension Funds for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel, and in Opposition to the Competing Motions to be filed electronically with the Clerk of the Court using the ECF system, and it is available for viewing and downloading from the ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

*s/ Naumon A. Amjed*
Naumon A. Amjed (PA #309520)
**KESSLER TOPAZ MELTZER**
**& CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com

*Counsel for Proposed Lead Plaintiff the Pension*
*Funds and Proposed Lead Counsel for the Class*

14